No. 26,708.

THE EMPIRE NATURAL GAS COMPANY, *Appellant*, v. FRANK THORP, *Appellee.*

SYLLABUS BY THE COURT.

1. GAS—*Special Rate to Landowner—Rights of Grantees of Portion of Land.* A contract of a natural gas company with a landowner agreeing to furnish him gas at twenty-seven cents a thousand cubic feet for the privilege of laying pipe lines across his land does not inure to the benefit of subsequent grantees of portions of the land where the company continues to furnish gas to the original landowner or his grantees at the houses which were on the land when the contract was made.

2. SAME—*Rates—Regulation by Public Service Commission.* Where, after such a contract as is mentioned in the first paragraph of this syllabus had been made, a portion of the land has been conveyed to another person and gas has been furnished to him at the contract rate, that rate is the legal rate as to him until changed by order of the public utility rate-regulating body of this state.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed May 8, 1926. Affirmed.

*Robert D. Garver,* of Kansas City, Mo., for the appellant.
*Joseph O'Hare,* of Winfield, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff commenced this action to procure a declaratory judgment concerning the rate that should be paid by the defendant for natural gas furnished to him at his house. Judgment was rendered in favor of the defendant, and the plaintiff appeals.

The case was tried on an agreed statement of facts, which, summarized, showed the following: In 1908, Phebe Roberts owned a tract of land near Winfield. The Wichita Natural Gas Company desired to construct a natural gas pipe line across this land and entered into a contract with Phebe Roberts by which the Wichita Natural Gas Company paid to her $1 and other valuable considerations for the right to lay and maintain a pipe line across the land and by which she was "to have privilege of using gas at twenty-seven cents net per thousand cubic feet." The pipe line was laid, and afterwards the rights of the Wichita Natural Gas Company were assigned to the plaintiff, which thereafter continued to furnish gas to Phebe Roberts and her assigns at twenty-seven cents net a

Gas, 28 C. J. pp. 564 n. 88, 577 n. 24.

thousand cubic feet. The defendant in 1922, through successive conveyances, became the owner of two and one-half acres of the land; and after he became the owner of the land, the plaintiff continued to supply him with gas at the rate of twenty-seven cents per thousand cubic feet until in the month of April, 1924, when the plaintiff refused to further supply gas to the defendant at that price. The plaintiff contends that by its contract, it is not obligated to furnish gas to the several owners of subdivisions of the tract of land at the rate of twenty-seven cents per thousand cubic feet.

1. The defendant contends that as a purchaser of a part of the land, he is entitled under the contract to have gas furnished to him at twenty-seven cents per thousand cubic feet; that twenty-seven cents was the rate in effect when the public utilities law was passed and the legal rate to the defendant; and that the rate of twenty-seven cents per thousand cubic feet was reasonable. *Alderson v. Natural Gas Co.*, 116 Kan. 501, 227 Pac. 347, is necessarily involved in the determination of the question presented. There, this court said:

"A contract by a natural-gas company, operating as a public utility, to furnish gas to a landowner for domestic use on his premises, in consideration of the right of the gas company to lay its pipes across the owner's land, can be enforced by the grantee of the landowner so long as the gas company occupies the land with its pipe lines." (Syl. ¶ 1.)

That case did not declare that numerous grantees of the landowner, when occupying the land, should each at the same time have gas furnished to them in their separate houses at the rate of twenty-seven cents per thousand cubic feet. That case declared the law where the owner of a tract of land, having a contract with the natural gas company to supply gas at a specific rate in consideration of the right to lay a pipe line across the land, transfers the land to a single grantee. The contract contemplated furnishing gas to the owner of the land, one owner, or joint owners treated as one, in one establishment, but did not contemplate a division of the land into a number of tracts and furnishing gas to the subsequent owner of each of those tracts. The defendant did not acquire the right to have gas furnished to him at twenty-seven cents a thousand cubic feet by virtue of his being a purchaser of two and one-half acres of the land.

2. There remains the question of the effect of the public utilities act on the rate in controversy. An order of the court of industrial

relations, dated August 17, 1920, is made part of the agreed statement of facts. By that order the court of industrial relations fixed a rate of fifty-six cents a thousand cubic feet and a monthly service charge of seventy-five cents to be charged by the Winfield distributing company for gas it sold to its customers for domestic purposes, and fixed a rate of forty cents per thousand cubic feet to be charged by the plaintiff to the distributing company for gas received by it from the plaintiff to be sold to domestic consumers in that city. Neither that order nor any other order of the court of industrial relations, or of any other board having charge of rates to be charged by public utilities in this state, fixed the rate to be charged by the plaintiff for gas furnished to the defendant or to persons similarly situated. The order of the court of industrial relations is not relied on by the plaintiff to name the rate to be charged by it for gas furnished to the defendant, but the plaintiff calls attention to that order for the purpose of showing that the rate charged the defendant is lower than it ought to be. No order of the public utility rate-regulating body is involved in this action. Here, we have a rate voluntarily put into effect and over which none of the rate-regulating bodies of this state has attempted to exercise any control.

Section 66-104 of the Revised Statutes in part reads:

"The term 'public utility,' as used in this act, shall be construed to mean every corporation, company, individual, association of persons . . . that now or hereafter may own, control, operate or manage, . . . any equipment, plant, generating machinery, or any part thereof . . . for . . . the conveyance of oil and gas through pipe lines in or through any part of the state."

The plaintiff is a public utility within the meaning of that law and is furnishing gas to the defendant under the law.

Section 66-108 of the Revised Statutes requires all public utilities to file with the public service commission copies of all schedules of rates, etc.

Section 66-109 in part reads:

"No common carrier or public utility governed by the provisions of this act shall, knowingly or willfully, charge, demand, collect or receive a greater or less compensation for the same class of service performed by it within the state, or for any service in connection therewith, than is specified in the printed schedules or classifications, including schedules of joint rates; or demand, collect or receive any rate, joint rate, toll, fare or charge not specified in such schedule or classification."

Section 66-117 of the Revised Statutes in part reads:

"Whenever any . . . public utility governed by the provisions of this act shall desire to make any change in any rate . . . such public utility or common carrier shall file with the public utilities commission [public service commission] a schedule showing the changes desired to be made and put in force by such utility or common carrier. . . . No change shall be made in any rate . . . without the consent of the commission."

These statutes apply to the rate in controversy. A schedule of that rate must have been filed to have complied with the law. It cannot be changed except on the order of the public service commission. Until the commission orders otherwise, that rate remains the legal rate for gas to be furnished to the defendant.

The judgment is affirmed.