No. 25,323.

P. L. ALDERSON, *Appellee,* v. EMPIRE NATURAL GAS COMPANY,
*Appellant.*

SYLLABUS BY THE COURT.

1. CONTRACT—*To Furnish Gas to Landowner for Domestic Use—Consideration Right to Lay Pipe Lines Across Owner's Land—Contract Valid.* A contract by a natural-gas company, operating as a public utility, to furnish gas to a landowner for domestic use on his premises, in consideration of the right of the gas company to lay its pipes across the owner's land, can be enforced by the grantee of the landowner so long as the gas company occupies the land with its pipe lines.

2. SAME—*Neither Gas Company Nor Its Assignees Can Refuse to Furnish Gas Under the Contract Until Rate is Changed by the Utilities Commission.* Such a gas company as is mentioned in the first paragraph of this syllabus, and the assignees of the company, can be enjoined from increasing the price of the gas to the landowner and from refusing to furnish gas to him, although that price is less than the rate fixed by the public utilities commission to be charged in cities, where the contract with the landowner was made before the enactment of the public utilities law and the public utilities commission has not made any order changing the rate to the landowner.

3. SAME—*Contract Does Not Violate an Order of the Public Utilities Commission.* Such a contract as is mentioned in the first and second paragraphs of this syllabus does not violate an order of the court of industrial relations (public utilities commission) fixing the rate to be charged for gas by distributing companies in certain cities in the state of Kansas.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed July 5, 1924. Affirmed.

*Robert D. Garver,* of Bartlesville, Okla., for the appellant.
*Joseph O'Hare,* of Winfield, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: By this action the plaintiff seeks to enjoin the defendant from discontinuing the supply of natural gas to the plaintiff at the rate provided in a contract between the Wichita Natural Gas Company, to which the defendant is successor, and Lee Williams and Lelia Williams, his wife, grantors to the plaintiff. Judgment was rendered on the pleadings for the plaintiff as prayed for, and the defendant appeals.

The petition alleged that the plaintiff was the owner of certain real property in Cowley county, purchased from Lee Williams and

Lelia Williams, his wife, in 1909; that about September 19, 1908, Lee Williams and his wife entered into a written contract with the Wichita Natural Gas Company by which Williams and his wife granted to the gas company the right and privilege of laying a gas pipe line across the real property, and as a part of the consideration therefor the gas company agreed to furnish natural gas for use on the premises at the rate of 27 cents per thousand cubic feet; that the plaintiff piped the dwelling house on the premises for natural gas, and has ever since continued to purchase and use natural gas furnished by the gas company and its successor, the defendant, from the pipe line; that the defendant became the successor of the Wichita Natural Gas Company, and continued to supply gas to the plaintiff as provided by the contract until March 1, 1923, when the defendant notified plaintiff the charge for gas would be 56 cents per thousand cubic feet and a customer's charge of 75 cents per month, which plaintiff refused to pay; and that plaintiff has tendered payment at the rate of 27 cents per thousand cubic feet for the gas used since March 1, 1923, but the defendant has refused to accept it and has informed the plaintiff the gas would be cut off from his use unless he paid the higher rate.

In its answer the defendant states that the rate of 56 cents per thousand cubic feet and 75 cents a month customer's charge is the rate prescribed by the court of industrial relations, and that the defendant is prohibited from charging any rate other than those set out in its schedules approved by the commission under chapter 238 of the Laws of 1911.

A copy of the order of the court of industrial relations was attached to the answer of the defendant, but that order is not shown in the defendant's abstract. The plaintiff abstracts the order as follows:

"Paragraph I of the order permits the installment of limiting devices by the distributing companies to regulate the hourly supply of gas to consumers.

"Paragraph V. In communities where gas is furnished from local fields to the distributing companies by the Wichita Natural Gas Company the gas supply shall be 15 cents per M.

"Paragraph VII. The cities supplied by the Wichita Natural Gas Company are incorporated into three different zones, of which Winfield and other cities of Cowley county are in zone one. After the installation of the limiting devices the rate charge for gas is permitted to be a service charge, depending in amount upon the hourly demand for gas by the consumer, and 30 cents per (1,000) thousand cubic feet of gas, excepting where the supply is local the rate shall be 15 cents.

Alderson v. Natural Gas Co.

."Paragraph ·VIII. Pending the installation of the limiting devices the rate in zone one shall be 75 cents as·a customer's charge, and 56 cents per (1,000) thousand cubic feet for gas used, except where a local supply is utilized the charge shall be 30 cents. No rates are fixed for the sale of gas by the Wichita Natural Gas Company to the distributing company, or for the sale of gas by said natural-gas company to individual consumers along its pipe line outside of cities. Paragraph VI, relating thereto, is as follows:

" 'That for the purpose of this order, the adjustment of rates between the distributing company and the Wichita Natural Gas Company is left for adjustment between the parties concerned, but the court finds that 35 cents per 1,000 cubic feet delivered at the gates of the city is not unreasonable.'

"The order fixing gas rates pertained to the city distributing companies and none other.

"By paragraph X it is ordered that permission be given to the distributing gas companies parties to this proceeding to put into effect and establish the rates heretofore mentioned; and it is further ordered that the practices, conditions and requirements mentioned in the findings shall be put into effect by said companies."

1. The defendant argues that "the contract, in so far as it gives to the grantor therein the right to use gas at a special price, is by its own terms personal to the grantors and does not run with the land to their grantees." The right-of-way contract or lease does not say that it is personal to the grantors. It provides for continuous occupation of·the land and continuous payment of rent by furnishing gas at 27 cents per thousand cubic feet for the use of the grantor. When and to whom was gas to be furnished? The only reasonable construction of the contract is that gas was to be furnished on the premises leased for use in the buildings thereon by whoever might be the owner thereof at any time in the future so long as the land is occupied by the pipe lines of the defendant. If the land is to be continuously occupied the payments therefor provided by the·contract should be continuously made.

The argument of the defendant that this is not a covenant running with the land is not sustained by the authorities. 1. Thornton on the Law of Oil and Gas, 3d ed., sec. 99, says that such an agreement is a covenant running with the land. Part of the second section of the syllabus to *Indiana Nat. Gas, etc., Co. v. Hinton,* 159 Ind. 398, reads:

"Covenants of a gas and oil lease to pay rent and to furnish the lessor with gas to heat and light his dwellings on the premises are covenants running with the land."

To the same effect is *Indiana Nat. Gas, etc., Co. v. Harper,* 50 Ind. App. 555, where the court said:

"A covenant in a gas lease whereby the lessee is to furnish lessor with gas to light and heat the dwellings on the premises within sixty days from the date of the lease, or in lieu thereof the sum of twenty dollars yearly in advance, is a covenant running with the land, for a breach of which the grantee of the lessor has a right of action."

2. Another contention of the defendant is that "the appellant is prohibited by the statutes of the state of Kansas from supplying gas to appellee at any rate other than that established by the public utilities commission of said state and included in its schedule on file with the commission." The defendant cites *Louisville & Nashville R. R. v. Mottley*, 219 U. S. 467, and relies largely on that case and others following it. In that case the Louisville & Nashville Railroad Company had agreed to issue passes to E. L. Mottley and Anna A. Mottley during their lifetime. The consideration for the agreement was a release for damages claimed to have been sustained in a collision on the railroad caused by the negligence of the company. After the passage of the interstate-commerce act the railroad company refused to issue passes. The action was brought to enforce the contract. The United States supreme court held that the railroad company could not be compelled to issue the passes. The decision was rendered on the principle that the contract became illegal by reason of its being in conflict with the interstate-commerce act.

When the public utilities law was enacted it provided that the lowest schedule of rates then in effect should be the legal rate unless the commission should otherwise order. (R. S. 66-130.) The rate to the plaintiff was then in effect. The public utilities commission has not ordered otherwise. Even if the commission has power to change that rate, it has not done so.

This contract is not governed by the principle declared by this court in cases involving the validity of franchise contracts made between cities and public-service corporations prior to the passage of the public-utilities law. In such cases it has been held that the state represents the cities, and that the state, for the cities, can consent to changes in the franchise contracts. In the present case the state does not and cannot represent the plaintiff and cannot contract for him. This case comes within the principle declared in *Landon v. Railway Co.*, 113 Kan. 628, 216 Pac. 309, where this court said:

"Natural gas furnished, under a contract, by a gas company to a railway company for use in the latter's freight and passenger depots and build'ngs appurtenant thereto, is not free or furnished without compensation where the

railway company, in consideration for the gas furnished and the payment of a certain amount of money, agrees that the gas company may use a part of the right of way of the railway company on which to lay pipe lines for the transportation of gas." (Syl. ¶ 2.)

There the receiver of the Kansas Natural Gas Company undertook to recover the regular rate for gas which had previously been furnished free to light and heat the Atchison, Topeka & Santa Fe Railway Company's buildings at Independence, in consideration of the right to lay pipe lines along the right of way of the railway company. This court held that the receiver could not recover; that the contract was good. ·

3. Furnishing gas to the plaintiff under the contract or lease at 27 cents a thousand cubic feet does not violate the order of the court of industrial relations fixing the rate to be charged for gas by distributing companies in certain cities in the state of Kansas, because the order fixed the price of gas furnished by distributing companies to their customers in the several cities named in the order. The plaintiff did not live in any of those cities. He was not receiving gas from any of those distributing companies. He was receiving gas direct from the pipe-line company which was furnishing gas to the distributing companies. The order did not fix rates to be charged by the pipe-line company and therefore did not affect the rate to be charged the plaintiff.

The attention of the court is directed to a very recent decision of the United States supreme court in which the court, in substance, holds that the rates charged by an interstate pipe-line carrier of gas are not subject to the control of a state through which the pipe line passes. It is not necessary to base the decision in the present case on the decision of the United States supreme court in that case.

The judgment is affirmed.