No. 36,836

The City of Iola, *Appellant*, v. A. B. Lytle et al., *Appellees*.

(187 P. 2d 378)

Opinion filed December 6, 1947.

*Kenneth H. Foust,* of Iola, argued the cause, and was on the briefs for the appellant.

*Spencer A. Gard,* of Iola, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was an action for a declaratory judgment construing a contract and determining the rights of various persons under it.

Under date of March 11, 1908, E. A. Hankins, widow, and five others describing themselves as the sole heirs of Nimrod Hankins,

deceased, conveyed to the city of Iola, in consideration of one dollar and covenants mentioned, "for use as a street for the public, a strip of land thirty (30) feet in width, being fifteen (15) feet on each side from the center of Jefferson avenue in Hankins addition to city of Iola, Allen county, Kansas, and extending from the north end of said avenue to Highland cemetery." Among other things the city agreed to macadamize the street, to build a sidewalk, to erect certain fences and install gates, to move the barn and other buildings and to put them on new foundations and "to furnish first parties (Hankins) with water free for one house, and for livestock kept on premises through which said street runs as long as said street is so used, . . . giving for all of said purposes, four connections with a three-inch main, . . . ." It is here noted that the contract does not describe the premises owned by the Hankins heirs, nor does it include such a description by any reference.

There is no controversy of fact involved. One Nimrod Hankins owned a tract of about thirty-eight acres in the northeast quarter of the northwest quarter of section 26, township 24, range 18, in Allen county, lying between the city of Iola on the south and Highland cemetery on the north. In 1900 he platted a strip across the south end of his land as Hankins addition to Iola. The addition consisted of four blocks divided by three north and south streets, the westernmost street being called Jefferson avenue. Sometime prior to 1908 Hankins died and later his heirs made the contract above mentioned.

At the time the contract was made there was but one house and one set of improvements on the unplatted land and they were situated west of the proposed road. After the contract was made the city improved the road, laid the water main with the four connections to the house and improvements and otherwise performed its covenants under the contract. Prior to the execution of the contract Nimrod Hankins had conveyed a small tract in the southwest part of the unplatted land to his son, W. C. Hankins, who later conveyed to Olive Hankins, but after the contract was made the Hankins heirs disposed of the remainder to various persons, and by mesne conveyances that portion containing the original house and improvements passed to the defendant, A. B. Lytle.

In 1946 the city filed its petition alleging execution of the above contract; that Lytle had purchased a part of the real estate lying next to the real estate conveyed to the city and was claiming a right

to free water; that W. C. Hankins was claiming free water under the contract, and other defendants claimed some interest by reason of the contract; that the city desired to comply with the contract, but contention had arisen between the city and the defendants, and it desired a construction of the contract, and it prayed that the defendants be compelled to come into court and set up their claims, and that the court construe the contract and determine the rights of the parties thereunder. Without detailing the allegations, it may be said that Lytle alleged he was owner of that part of the unplatted lands which contained the house and improvements as the same existed when the contract was made, and was entitled to free water to the exclusion of the other defendants. Datus Newton and Pansy Newton were permitted to intervene, and filed a petition and answer alleging that since the commencement of the action they had purchased from Lytle and that they were entitled to free water. According to their petition and answer they own the following:

"That part of the north 20 acres of the Northeast Quarter of the Northwest Quarter of Section 26 lying west of the Jefferson Street extension, less a strip 25 feet wide off of the south side, and also less that part described as follows: Commencing at the northwest corner of said Northeast Quarter of the Northwest Quarter; thence east 328 feet more or less to the west line of Jefferson Street extended; thence south 381 feet, 4 inches; thence west 107 feet, 4 inches; thence north 198 feet; thence west 217 feet, 6 inches; thence north 200 feet to beginning."

W. C. Hankins filed an answer that he and Olive Hankins occupied the lands conveyed to him by his father; that they were parties to the contract and had never sold, assigned or transferred the free water right, and that he and Olive Hankins were entitled to water free for one house and for livestock kept on their premises, and he asked that the contract be so construed. With permission of the court Olive Hankins filed her interplea asking a similar construction of the contract. At least one defendant filed a disclaimer of any right under the contract.

A trial was had at which the above facts were developed. In addition to the facts stated, Datus Newton testified that he owned a total of forty-one acres, of which five or six acres were part of the old Hankins property; that he used his property as a farm, pastured his stock on the whole farm, but watered them on the old Hankins property. The trial court made no findings of fact but found that the contract was one with the Hankins individually and they are entitled to free water for one house as long as they or either shall

live and as long as the street is used by the city, and that the city shall furnish water for all livestock kept on the premises, and it ordered that the several Hankins, "sole heirs of Nimrod Hankins, deceased," shall have free water for one house as long as the city should use the conveyed strip as a public street, and that the city should "furnish free water for all livestock kept on the premises through which said street runs" as long as the land conveyed was used as a street. It is here noted that the court made no finding as to what real estate was included in "the premises."

Plaintiff's motion for a new trial was denied and it perfected its appeal to this court. In this court the only appellees who have filed a brief are Datus and Pansy Newton. We first note their contention the city's appeal should be dismissed for the asserted reason the city asked the trial court to construe the contract, and the city got what it asked for, a construction of the contract, and it cannot be aggrieved by the judgment. Without extended discussion, it may be said such a contention cannot be sustained. It is true the city asked for construction of the contract, but that can hardly be interpreted as a concession that it would agree that whatever the judgment of the trial court was, it was a finality from which no appeal could be taken. If the judgment rendered imposed on the city a greater burden than it believed proper, it certainly was sufficiently aggrieved to prosecute an appeal, and we so hold.

Although the final judgment must take into account the situation disclosed by the undisputed facts, the primary question is the construction of the contract, the general terms of which have been set forth above, and especially the extent and nature of the city's covenant to furnish water.

We do not find it necessary to discuss at length the nature of the city's covenant as to whether it is personal or one that runs with the land. The matter may be found treated at length in 14 Am. Jur. 495 *et seq.* In 26 C. J. S. 485, it is said that conditions subsequent are usually attached to the title and usually run with it against subsequent grantees with notice, but the intention of the parties controls, and, if the language shows an intent to create a personal obligation, it will be so construed. In 67 C. J. 1225, it is said that a contract by a municipality to furnish water in consideration of certain property rights is a covenant running with the land. (See *Carmichael v. City of Greenville*, 112 Miss. 426, 73 So. 278, cited in support of the above statement.)

The contract in question makes it clear that the covenants to be performed by the city pertain solely to acts to be done after its execution and that they were conditions subsequent. We think it clear from the contract that the city agreed to furnish water for the house then on the premises, and no other, and for livestock kept on that part of the whole Hankins tract that might come within the purview of the word "premises." As originally drawn the word "premises" was not defined, but the evidence makes it clear that as of the date of the contract it was the unplatted portion of the lands owned by the heirs of Nimrod Hankins, and that at the time of the trial it consisted of the real estate owned by the Newtons.

The contract contains no language susceptible of interpretation that it was personal to the Hankins heirs or that they were to receive free water at any other house or for any purpose not connected with the original house and premises. On the contrary the contract provided for four connections with a three-inch main and the evidence discloses they were installed at the original house and premises. Not only are we of the opinion that it was implicit in the contract that the right to free water was one attaching to the original Hankins house and the real estate or premises on which it was situated, but that it was a single indivisible right not subject to conveyance, transfer or assignment separate and apart from the ownership of the house, and that when purchasers of other portions of the unplatted lands received conveyances thereto, no right to water followed the title to them.

It has been noted that Datus Newton and Pansy Newton are now the owners of the original homesite and as such owners they are entitled to the free water for their house and livestock. No particular point is made in the briefs, but as has been noted the Newtons not only own the original homesite and about five or six acres of the original lands, but they own about thirty-five acres of adjoining lands. They use the whole tract for pasturage but water the livestock on the premises included in the unplatted land. In our opinion it was never contemplated that the city would furnish free water for livestock other than that normally kept on the premises included in the unplatted lands. The record before us does not disclose the full situation as to the Newton livestock and we shall not discuss that phase of the matter further.

The judgment of the trial court is reversed and the cause is re-

manded with instructions that if necessary it take further evidence with reference to Newton's livestock, and that it then render judgment consistent with the views heretofore expressed, and that it include in its judgment, either by inclusion or specific reference to their deed, the description of the real estate owned by Datus Newton and Pansy Newton which is a part of the unplatted lands originally owned by the Hankins heirs.