No. 49,955

DONALD W. JACKSON, *Appellant,* v. RICHARD A. FARMER and CARO-
LYN SUE FARMER, *Appellees.*

(594 P.2d 177)

Opinion
filed May 5, 1979.

*Richard Jones,* of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause, and *J. Michael Kennalley,* of the same firm, and *Gene H. Sharp,* of Vance, Hobble, Neubauer, Nordling, Sharp & McQueen, P.A., of Liberal, were with him on the brief for the appellant.

*Eugene L. Smith,* of Smith, Greenleaf & Brooks, of Liberal, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

MILLER, J.: The "free gas" and "unitization" clauses in a standard Form 88 Producers (Kans., Okla. & Colo., 1942 Rev., Bw form) oil and gas lease give rise to the dispute presented in this action between the owner and operator of four unitized leases, on which there is one producing gas well, and the owners of the surface only of a part of the land included in the unit. Donald W. Jackson, plaintiff-appellant, is the owner and operator of the leases and the well. Richard A. Farmer and Carolyn Sue Farmer, husband and wife, defendants-appellees, are the surface owners.

The ultimate issue is whether the Farmers, the owners of the surface only of the N ½ NW ¼ § 3, are entitled to take "free gas" to heat their home from the unit well on the SW ¼ of § 3, under the terms and conditions of the lease and the unitization declaration, and under all of the facts and circumstances of this case.

The facts are stipulated. Section 3-34S-33W, in Seward County, Kansas, was leased for oil and gas in the 1940's. Each quarter section was under separate ownership, so four separate leases were executed, those on the NW ¼, the NE ¼ and the SE ¼ being on Bw Form 88 producers leases as described above, and the SW ¼ being on an L. B. 88 Revised form. The leases on the NW ¼, the NE ¼ and the SE ¼ contain the following provisions:

"4. . . . the lessor to have gas free of charge *from any gas well on the leased premises* for stoves and inside lights in the principal dwelling house on said land by making his own connections with the well, the use of such gas to be at the lessor's sole risk and expense.

"7. In case said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein then the royalties and rentals herein provided for shall be paid the said lessor only in the proportion which his interest bears to the whole and undivided fee. . . .

"9. If the estate of either party hereto is assigned (and the privilege of assigning in whole or in part is expressly allowed), the covenants hereof shall extend to the heirs, devisees, executors, administrators, successors and assigns . . . .

"16. The unitization of this lease or any portion thereof with any other lease or leases or portions thereof shall be accomplished by the execution and filing by lessee in the recording office of said county of an instrument declaring its purpose to unitize and describing the leases and land unitized, which unitization shall cover the gas rights only and comprise an area not exceeding approximately 640 acres. The royalty provided for herein with respect to gas from gas wells shall be apportioned among the owners of such royalty on minerals produced in the unitized area in the proportion that their interests in the minerals under the lands within such unitized area bear to the minerals under all of the lands in the unitized area. *Any well drilled on such unit shall be for all purposes a well under this lease* and shall satisfy the rental provision of this lease as to all of the land covered thereby; provided, however, lessee shall be under no obligation, express or implied, to drill more than one gas well on said Unit." (Emphasis supplied.)

The lease on the SW ¼ contains similar provisions. Pursuant to the authorization for unitization contained in each of the leases, the four leases covering all of § 3 were unitized in 1953. The four leases and the unitization agreement remain in full force and effect.

A gas well (known as the Thompson well), producing from the Hugoton pay zones, was completed in 1953. Production from this well, located in the SW ¼ of section 3, has been continuous ever since. There are no other gas wells on section 3. There are now only two houses on the section. One house on the SW ¼ has been supplied with "free gas" for heating purposes since 1953; there was one house on the SW ¼, the only house on section 3, when the well was drilled; apparently that house was destroyed, but the replacement of this house is still connected to the well and is still using "free gas" from the well.

The appellant, Jackson, has owned, produced, and operated the Thompson well since 1971. Lowene O. Priefert is the owner of the minerals underlying the NW ¼; James R. Yoxall is the owner of the surface only of the S ½ NW ¼ and the appellees, the Farmers, are the owners of the surface only of the N ½ NW ¼ of section 3. Yoxall and the Farmers own no mineral interest.

The Farmers erected a residence on their 80-acre tract in 1974, and they now occupy it as their home. It is the only house now existing on the NW ¼ of section 3. Farmers asked Jackson to make an outlet available at the wellhead in order that they might utilize their "free gas" privileges; Jackson denied that the Farmers had any such privileges, and refused to provide an outlet. The Farmers then applied for and obtained a gas service contract from

People's Natural Gas Company, and in January, 1975, commenced purchasing natural gas from People's to heat their home. Between January, 1975, and March, 1976, Farmers paid People's the sum of $525.54 for gas.

By a conveyance dated February 9, 1976, Lowene O. Priefert and her husband, as owners of the minerals under the NW ¼ of section 3, assigned to the Farmers all of the Priefert's right to use free gas for domestic purposes, using the following language:

"The enjoyment of Grantors' right, if any, to the free use of gas for domestic purposes under the terms and provisions of a certain oil and gas lease dated February 26, 1948, between Ross Fraim and Opal B. Fraim, his wife, as lessors, to Earl M. Knighton, as lessee, or any future oil and gas lease of record, on the NW/4 of Section 3-T34S-R33W of the 6th P.M., Seward County, Kansas. — for the sum of $10.00 and other valuable considerations.

"EXCEPT AND SUBJECT TO: Oil and gas leases, unitization agreements and easements of record, if any, insofar as the same are valid."

In March, 1976, the Farmers laid a pipeline from their home to the well, welded a connection to the wellhead casing, and commenced using gas from the well to heat their home; they continue to do so. They shut off the gas from People's, but retained the connection and continued to pay the minimum charge in order to have a standby fuel source.

Jackson discovered the connection in June, 1976. He demanded that Farmers disconnect the line. Upon their refusal to do so, Jackson commenced this action for a mandatory injunction requiring removal of the line, and for an accounting for the reasonable market value of all gas appropriated. Farmers answered, denying that plaintiff was entitled to any relief, and they filed a counterclaim for damages in the amount of $525.54, and for a permanent injunction prohibiting the plaintiff from interfering with their use of gas from the well.

The trial judge denied plaintiff any relief, and he granted Farmers a money judgment for $525.54 and the injunctive relief they sought. Jackson appeals.

The first issue is whether defendants' residence is the "principal dwelling house" on the NW ¼ § 3. The trial court's finding is as follows:

"The term 'the principal dwelling house on said land', as that language is used in the free gas clause in paragraph 4 of the lease, is not limited to mean a building in existence at the time the lease is written, nor at the time a well is drilled, absent specific language to that effect. Where no structure exists at the date of the lease,

the only meaning which could be ascribed to the terms would be a dwelling subsequently to be erected. Any structure used as a dwelling may be designated 'the principal dwelling house on said land' so long as the lessee's burden is not increased beyond the obligation of furnishing or permitting the use of enough gas to heat and light one dwelling."

Appellant contends that there was no house on the NW ¼ when the lease was executed and that the free gas clause was intended to apply only to buildings then on the premises. He relies upon *Warfield Natural Gas Co. v. Moore*, 281 Ky. 689, 136 S.W.2d 1086 (1940) and *City of Iola v. Lytle*, 164 Kan. 33, 37, 187 P.2d 378 (1947). Neither case supports his argument. *Warfield* stands for the proposition that a lessor who is entitled to free gas to heat the lessor's dwelling may not erect a second house and connect it to the free gas line while the original house is still being served. In other words, the lessor cannot have free gas for two houses when the lease restricts the free gas right to one dwelling. In *Lytle*, the City of Iola had contracted to furnish a landowner with free water for one house, and for livestock kept on the premises. The city promised to give the landowner four connections with its three-inch main; it had done so. After the original house was sold, a dispute arose. This court held that it was implicit in the contract that the right to free water was one attaching to the original house, and the right was not transferable separate and apart from the ownership of the house. The original house was still in use. Neither *Warfield* nor *Lytle* is persuasive here.

The trial court's logic is sound. Under plaintiff's theory, the free gas clause would be a nullity whenever there was no house existent on the leased land. A court should avoid unreasonable interpretations whereby a contract provision is reduced to an absurdity and the parties' intent vitiated. *Garvey Center, Inc. v. Food Specialties, Inc.*, 214 Kan. 224, 519 P.2d 646 (1974).

The burden of the covenant cannot be enlarged. But if there is no house on the land when the lease is executed, and one is erected years later, the requirement that the lessee then furnish free gas to the single house on the land does not increase the burden; it simply furnishes a basis for presently enforcing it. This is supported by the rule that free gas may be transferred from one dwelling to another so long as the use is limited to the one principal dwelling house. See *Salisbury v. Columbian Fuel Corporation*, 387 S.W.2d 864 (Ky. App. 1965), where it was held that the right to use free gas was a covenant running with the land,

and free gas was properly furnished, one house at a time, to the "principal dwelling" until it burned; then to the "rent house" while a new house was being erected on the former site of the principal dwelling; then to the new house; and finally, after a division of the leased land, to the "rent house" in accordance with a deed to the land on which the "rent house" was located, which deed recited: "It is understood Parcel No. 5 will have free gas to the house on said described land." (387 S.W.2d at 865.)

The Farmers' house is the only dwelling on the NW ¼ of section 3. We hold that it is the "principal dwelling house" on that quarter section within the meaning and intent of the lease.

Jackson contends that the appropriation of gas by Farmers from the well on the Southwest quarter enlarges the lessee's burden in violation of the *Warfield* rule. The fallacy of this contention is that in *Warfield* there was but one lease, and the obligation to furnish free gas to one house. In the case at hand, there are four leases, each containing a free gas clause obligating the lessee to furnish gas for one house on the described quarter section. The burden has not been enlarged.

The principal issue is whether the appellees, under the terms of the documents and facts before us, are entitled to free gas from a well which is not located on the Northwest quarter. Appellant contends in essence that Farmers' right is limited to gas produced on the Northwest quarter; that the unitization clause does not extend that right; and that since Farmers have suffered no detriment, they are not entitled to the benefit of free gas.

Paragraph 4 of the original lease on the Northwest quarter provides in part:

"The lessee shall pay lessor as royalty ⅛ of the proceeds from the sale of gas as such at the mouth of the well where gas only is found . . . the lessor to have gas free of charge from any gas well on the leased premises for stoves and inside lights in the principal dwelling house on said land . . . ."

The lessor thus received two contingent benefits from the lease—a ⅛ royalty interest in the proceeds of gas sold, and a right to free gas for the principal dwelling located on the land. Both the royalty and the right to free gas are rentals.

In 3A Summers, Oil & Gas § 571, it is stated:

"The covenant of the lessee to furnish free gas for domestic heating and lighting may be technically called a rent. This agreement is a covenant running with the

land, the benefit thereof passing to the assignee of the lessor and the burden to the assignee of the lessee."

See also 3 and 3A, Summers, Oil & Gas §§ 553, 587; 3 Williams, Oil & Gas Law § 661.2; Annot., 79 A.L.R. 502; 38 Am. Jur. 2d, Gas & Oil § 84. On the theory that use of gas under free gas clauses actually benefits only the surface owner, the authorities agree that this covenant runs with the *surface* estate of the land, not the mineral estate. 3 Williams, Oil & Gas Law § 661.2; 3 Summers, Oil & Gas § 553; 4 Kuntz, Oil & Gas § 53.6, at p. 349. See also *Alderson v. Natural Gas Co.*, 116 Kan. 501, 503, 504, 227 Pac. 347, 41 A.L.R. 253 (1924); and *Sinclair Oil & Gas Co. v. Huffman*, 376 P.2d 599 (Okla. 1962).

Farmers acquired title to the surface by deed from Yoxall; they also received a grant from the Prieferts, owners of the minerals underlying the NW ¼, of their right, if any, to free gas. The latter conveyance was of no impact since the Prieferts had already sold the surface. The right to take gas free of charge for heating the principal dwelling, and the obligation of the lessee to permit such taking is, as we have seen, a covenant running with the surface of the land and thus the Farmers acquired that right through their deed from Yoxall to the surface.

Farmers own only half of the surface of the NW ¼—the north half. But the only dwelling house on the entire quarter section is located on the north half. We hold that they *now* have the right "to have gas free of charge" as that right is granted according to the terms of the lease.

Is that right limited to gas produced from a well located on the NW ¼? We think not. The unitization clause, included in the original lease, provides that any well drilled on the *unit* "shall be for all purposes a well under this lease and shall satisfy the rental provision of this lease as to all of the land covered thereby; Provided, however, lessee shall be under no obligation . . . to drill more than one gas well on said Unit." The Declaration for Unitized Operations declares that the parties "do hereby consolidate the gas rights under [the four] leases *for all purposes of said leases* . . . ." (Emphasis supplied.)

The gist of appellant's argument is that the unitization clause in the lease, and the Declaration, do not apply to the free gas clause, and do not expand that clause to include gas produced from other than the "leased premises"—here the NW ¼. Unquestionably, the

right to unitize inures principally to the benefit of the lessee. Some of those benefits were enumerated by Justice Fromme in *Klippel v. Beinar*, 222 Kan. 681, 685, 567 P.2d 867 (1977), as follows:

"(1) The life of the lease is extended as to all included tracts beyond the primary term and for as long as oil, gas or other minerals are produced from any one of the tracts included; (2) the commencement of a well on any one of the tracts operates to excuse the payment of delay rentals on all included tracts for the period stated in the respective leases; (3) production from a well on any one of the tracts relieves the obligation to pay delay rentals, during production, on all included tracts; (4) the lessee is relieved of the usual obligation of an implied covenant for reasonable development of each tract separately; (5) wells may be located without reference to property lines; and (6) the lessee is relieved of the obligation to drill off-set wells on other included tracts to prevent drainage by a well on any included tract."

Unitization is a useful device and is frequently utilized when gas is found. One well, properly located, can serve to release the gas from an extensive acreage. Unitization makes for economy in production: fewer wells need be drilled, equipped, and serviced, and there is less chance for waste. See *Somers v. Harris Trust & Savings Bank*, 1 Kan. App. 2d 397, 566 P.2d 775 (1977). Unitization also provides a fair and equitable method of dividing the royalty between the concerned landowners.

Among the familiar rules governing the construction of oil and gas leases are these: the intent of the parties is the primary question; meaning should be ascertained by examining the document from all four corners and by considering all of the pertinent provisions, rather than by critical analysis of a single or isolated provision; reasonable rather than unreasonable interpretations are favored; a practical and equitable construction must be given to ambiguous terms; and any ambiguities in a lease should be construed in favor of the lessor and against the lessee, since it is the lessee who usually provides the lease form or dictates the terms thereof. *Tate v. Stanolind Oil & Gas Co.*, 172 Kan. 351, 356, 240 P.2d 465 (1952); *Rogers v. Westhoma Oil Co.*, 291 F.2d 726 (10th Cir. 1961); *Gilmore v. Superior Oil Co.*, 192 Kan. 388, 391, 388 P.2d 602 (1964); *Lightcap v. Mobil Oil Corporation*, 221 Kan. 448, 458, 562 P.2d 1 *cert. denied* 434 U.S. 876 (1977). The lease before us must be read and considered as a whole; the unitization clause must be considered together with all of the other provisions in the lease, including the free gas

clause; and effect must be given, if possible, to all provisions of the lease.

Here the single producing well on the SW ¼ serves to keep all four leases alive. It is "for all purposes a well under this lease." Among those purposes is the purpose to provide, at the wellhead, free gas for the principal dwelling houses on each of the leased quarters. This interpretation avoids the unjust result of giving the lessee the benefits of unitization and letting him escape the responsibility of furnishing free gas which each lease imposes. To adopt appellant's construction would write the free gas clause out of every unitized lease save the one covering the tract on which the lessee chose to locate the gas well. The interpretation here adopted finds support in some treatises (Brown, Law of Oil and Gas, 2d ed., § 10, p. 10-49; 3 Williams, Oil & Gas Law § 661.7) and is criticized in another (4 Kuntz, Law of Oil & Gas § 53.6, pp. 352-354). Nevertheless, under the peculiar terms of the documents before us, we hold that this interpretation comports with the intention of the parties as expressed in the lease.

Jackson contends that since the Farmers do not have a well on their land, they do not have any detriment or burden and therefore they should not be allowed to enforce the free gas covenant. This argument overlooks one important fact: the lease on the NW ¼ is still in full force and effect, and the lessee may in the future enter and drill wells for either gas or oil thereon; and though the surface owner may have no royalty interest, his surface estate is still burdened with the lease.

Finally, we have not overlooked the many cases relied upon by appellant in support of his unitization argument; but in none of those cases do we find the "well for all purposes" language present in the instant lease, and the cases are thus unpersuasive and distinguishable.

Under the precise terms of the lease involved, we hold that appellees are entitled to take gas from the unit well, without charge, for the purpose of heating the principal dwelling house on the NW ¼ of § 3—their home.

The judgment is affirmed.

HERD, J., not participating.

HOLMES, J., dissenting: I respectfully dissent. Lack of time precludes an extended dissertation of my interpretation of the

"free gas" and "unitization" clauses of the various Form 88 Producers leases used in Kansas. Suffice to say it is my opinion that the general language of the unitization clause to the effect that "Any well drilled on such unit shall be for all purposes a well under this lease . . ." does not override and is not inconsistent with the specific language of the free gas clause stating ". . . the lessor to have gas free of charge from any gas well on the leased premises . . . ." There being no well upon the northwest quarter of the section (the leased premises), the defendants are not entitled to receive free gas from the well on the southwest quarter even though the properties may have been unitized for purposes of development.

"[O]nly the owner of the surface where the well in question is located is entitled to free gas from such well and . . . he is not entitled to free gas from any well which is not located on his land." Kuntz, Discussion Notes, 17 O. & G. Rep. 777-778 (1963).

I would reverse the decision of the trial court.