**Langdon L. and Reece D. MORGAN, Plaintiffs,**

v.

**MOBIL OIL CORPORATION, Defendant.**

No. 82–1157.

United States District Court, D. Kansas.

Jan. 24, 1983.

Ted R. Morgan, Lakin, Kan., for plaintiffs.

Jerome E. Jones, Wichita, Kan., for defendant.

MEMORANDUM AND ORDER

KELLY, District Judge.

Pending before the Court are summary judgment motions filed by plaintiffs and defendant. Plaintiffs are the lessors of three quarter-sections of land in Morton County, in Southwest Kansas. Defendant Mobil Oil Corporation (Mobil) leases these three tracts and is currently producing gas from them. Plaintiffs seek a legal determination that their leases with Mobil have terminated, at least as to production from all geological formations below the Panoma-Council Grove formation. Both sides have filed extensive briefs supporting their respective positions, and the Court has had the benefit of counsels' oral argument. Following careful consideration of the stipulated facts and the applicable case law, the Court finds defendant's motion for summary judgment should be granted.

I. FACTS

Prior to the filing of the pending motions, the Court allowed both parties to file their separate versions of a pretrial order. The stipulated facts in both orders are essentially identical, although plaintiffs have added

additional information regarding background of the litigation. Counsel for Mobil has represented to the Court that although it does not agree that all of the facts contained in plaintiffs' pretrial order are relevant, Mobil nevertheless does not contest their accuracy. Consequently, the Court adopts the plaintiffs' version of the stipulated facts as set forth in their pretrial order (Dkt. 12) [1]. The parties have also attached identical exhibits labeled A through K to their respective proposed pretrial orders. Plaintiffs have attached an additional Exhibit L to its proposed pretrial order, which is the 1938 Kansas Corporation Commission order regarding unitization of the Hugoton Field. For the purposes of this order, the Court adopts the exhibits, including plaintiffs' Exhibit L, as they are incorporated by reference into the stipulated facts set forth below. The following are the stipulated facts from plaintiffs' proposed pretrial order, which Mobil agrees are uncontroverted. (The location and ownership of the various tracts and the gas wells are illustrated on a map attached at the end of this Order.)

1. On or about January 25, 1930, L.C. Morgan and W.S. Morgan, her husband (parents and predecessors in title to plaintiffs), were the owners of the SE/4 of Sec. 6, Twp. 33S, R. 39W, in Morton County, Kansas; the NE/4 of Sec. 6, Twp. 33S, R. 39W, in Morton County, Kansas; and the NW/4 of Sec. 8, Twp. 33S, R. 39W, in Morton County, Kansas. Mr. and Mrs. Morgan executed and delivered three separate oil and gas leases, one for each tract herein described, to the Argus Production Company, defendant's predecessor in interest.

2. The lease of the SE/4 of Sec. 6, Twp. 33S, R. 39W provided for annual delay rentals, and a primary term of ten years. A commercial producing gas well was completed on this quarter on July 7, 1930.

3. The lease of the NE/4 of Sec. 6, Twp. 33S, R. 39W, provided for annual delay rentals; was for a primary term of ten years; and was released on February 27, 1938.

4. The lease of the NW/4 of Sec. 8, Twp. 33S, R. 39W, is for a primary term of ten years; and provides for annual delay rentals.

5. On or about February 15, 1937, Floyd A. Thomas, et al., executed and delivered to Missouri Valley Gas Corporation, defendant's predecessor in interest, an oil and gas lease covering the NW/4 of Sec. 7, Twp. 33S, R. 39W, Morton County, Kansas, and other land.

6. On November 27, 1938, L.C. Morgan and W.S. Morgan, her husband (plaintiffs' predecessors in interest), executed and delivered a second oil and gas lease covering the NE/4 of Sec. 6, Twp. 33S, R. 39W, in Morton County, Kansas, to Republic Natural Gas Company. Republic Natural Gas Company, defendant's predecessor in interest, became the owner of each of the above leases prior to November of 1938.

7. On or about May 9, 1930, L.C. Morgan and W.S. Morgan, her husband, conveyed an undivided ½ of the minerals in and to the SE/4 of Sec. 6, Twp. 33S, R. 39W, Morton County, Kansas, to B.A. Hardey, subject to the terms of the lease described at paragraph 1 above. These mineral interests are now owned by E.V. Baker of Houston, Texas, who acquired the same by virtue of a federal bankruptcy sale.

8. The Kansas Corporation Commission on August 13, 1938, entered an order regarding unitization within the Hugoton Field. This Order was affirmed following rehearing on September 17, 1938 (Ex. "L").

9. Republic Natural Gas Company prepared an instrument entitled "Unit Operating Agreement" dated November 28, 1938, (Ex. "F"), which was signed by all of the mineral and fee owners.

---

1. In the interest of brevity the Court has condensed certain portions of the stipulated facts as they appear in plaintiffs' pretrial order.

10. On March 11, 1974, prior to drilling a second well, an Amendment to the Unit Operating Agreement (Ex. "F") insofar as it related to production from the Panoma-Council Grove formation, was executed by all of the mineral owners and Mobil (Ex. "G").

11. On April 7, 1974, a well was completed in the NW/4 of Sec. 8, Twp. 33S, R. 39W, Morton County, Kansas as a gas well capable of producing from the Panoma-Council Grove formation. Royalty payments have been made on the gas produced from the Hugoton-Chase pay zone located on the SE/4 of Sec. 6, Twp. 33S, R. 39W, since 1938 or the first part of 1939 in the proportions set out by the Unit Operating Agreement (Ex. "F") and on the gas produced from the Panoma-Council Grove well located on the NW/4 of Sec. 8, Twp. 33S, R. 39W, in the proportion set out by the amendment to the Unit Operating Agreement (Ex. "G"), said royalty payments being made since 1974.

12. On June 20, 1980, a well known as the Morgan "E" No. 1 was completed in the NW/4 of Sec. 8, Twp. 33S, R. 39W, Morton County, Kansas, as a gas well producing from the Morrow formation. The Morrow formation is located below the base of the Panoma-Council Grove formation. The Morgan "E" unit Morrow formation has not been regulated by the Kansas Corporation Commission, and the only restrictions thereon regarding production is the general Kansas statute which prohibits the taking of more than 25% of a well's open flow.

13. On February 27, 1981, defendant submitted to plaintiffs a Division Order based upon the provisions contained in the Unit Operating Agreement (Ex. "F"), and a letter of transmittal.

14. On April 27, 1981, the plaintiff, Langdon L. Morgan, by certified mail, mailed a copy of a demand to Mobil. This demand was made in response to a telephone conversation wherein J.M. Glendinning, and later Lowell Case, Mobil employees and agents, stated that the amendment to the Unit Operating Agreement, dated March 11, 1973 (Ex. "G"), did not apply to the Anadarko Production Company Morgan "E" unit, since the same was limited to Panoma-Council Grove formation only.

15. On June 15, 1981, defendant submitted to plaintiffs a proposed Amendment of the Unit Operating Agreement. Plaintiffs refused to execute the proposed amendment as submitted because they contended it would amend or attempt to amend, confirm and interpret Mobil's leasehold status and would attempt to perpetuate the status of Mobil's claimed interests.

16. On September 3, 1981, plaintiffs forwarded to defendant an executed division order allotting the payment of royalty between the acreage attributable to the unit in the same proportions as provided by the proposed amendment and in the same proportions as set out in Exhibit "G".

17. Royalty attributable to the production from the Morrow formation has been paid in conformance with the provisions of the Unit Operating Agreement dated November 28, 1938 (Ex. "F"), and not as demanded by the plaintiffs.

18. This action was commenced in the District Court of Morton County, Kansas, on January 20, 1982.

## II. LEGAL DISCUSSION

A. The Disputed Provisions of the Unitization Instruments

This case was correctly removed to Federal District Court by defendant Mobil pursuant to 28 U.S.C. § 1441 et seq. Jurisdiction here is properly based on 28 U.S.C. § 1332.

Plaintiffs' motion for summary judgment sets forth two issues which both essentially query whether plaintiffs' three oil and gas

leases expired at the end of their 10-year primary term except for production from the Hugoton and Panoma-Council Grove formations. Two of plaintiffs' leases contain the following provision regarding the terms of the leases:

It is agreed that this lease shall remain in force for a term of ten years from date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee, and/or if lessee shall commence drilling operations at any time while this lease is in force, this lease shall remain in force and its terms shall continue so long as such operations continue with due diligence and if production results therefrom then as long as production continues.

(Exs. A and C.) Plaintiffs' third lease, Ex. D, contains a similar provision. Consequently, plaintiffs' leases on the NE/4 of Sec. 6, and the NW/4 of Sec. 8, would have expired at the end of ten years, since production never occurred on the NE/4 of Sec. 6, and production from the NW/4 of Sec. 8 did not occur until 1974. Only the lease upon the SE/4 of Sec. 6 would have continued beyond term, due to production from the Hugoton well within and subsequent to the term of that lease.

Oil and gas leases are commonly continued beyond their primary term even though production has not occurred on the leased tracts, and this can be accomplished by a unit agreement. When this occurs, the "express provisions of the lease or unit agreement will govern the effect of production from the unit at the expiration of the primary term of the lease of a tract, all or part of which is included in the unit...". 6 Williams & Myers, Oil and Gas Law § 953, p. 715 (1980). The battle lines between the parties at bar are drawn regarding their respective interpretations of provisions perpetuating the leases in the unitization agreement signed in 1938 and the 1974 amendment thereto.

The 1938 unit operating agreement (Ex. F) contains the following two provisions regarding perpetuation of the leases beyond their primary term:

1. Lessors hereby agree that for the purpose of connecting above described gas well to a pipe line, the production of oil and gas, and division of royalties on oil and gas, said unitized area, however the same may now or hereafter be divided in ownership shall be and remain a single unit, and shall be developed and operated as a single lease, and all royalties accruing from oil and gas produced from any well or wells located anywhere on said unitized area, shall be divided among and paid to the several lessors, their heirs and assigns, . . .

This agreement shall be in full force and effect, and the respective payments to be made thereunder and as above provided, at the time said gas well has been connected to a pipe line and is being produced, and shall be in lieu of any and all other payments to which this Lessee may be obligated, whether the same was by the terms of the oil and gas leases, held by this lessee, or by special contracts entered into by any of said Lessors and Lessee. Such respective payments shall be made at the time and in the manner and to the depository specified in said respective leases. *The production of oil and/or gas from said unitized area in paying quantities, shall perpetuate the oil and gas rights of Lessee under all of said leases in said entire unitized area and relieve Lessee from all further obligation to drill and/or to pay delay rentals under any and all leases covering lands within said area;* PROVIDED, HOWEVER, that if oil in commercial quantities be discovered on the unitized area, or on adjoining lands, nothing herein contained shall relieve lessee from the obligation to develop the unitized area in conformity with the practice of the oil industry.

\*     \*     \*     \*     \*     \*

6. *This agreement and the rights of Lessee under all leases covering parcels within the unitized area, shall be and*

*remain in full force and effect so long as oil or gas is produced in paying quantities anywhere in said area, and shall not be affected by the expiration of the primary term of said leases, or any of them.*

(Emphasis supplied.)

B. General Rules of Interpretation and Plaintiffs' Arguments

■ Plaintiffs and defendant argue contrary interpretations of the unitization agreements, and the Court must decide which is correct according to Kansas law. The Kansas Supreme Court has stated the following general rules regarding the interpretation of oil and gas leases:

[T]he intent of the parties is the primary question; meaning should be ascertained by examining the document from all four corners and by considering all of the pertinent provisions, rather than by critical analysis of a single or isolated provision; reasonable rather than unreasonable interpretations are favored; a practical and equitable construction must be given to ambiguous terms; and any ambiguities in a lease should be construed in favor of the lessor and against the lessee, since it is the lessee who usually provides the lease form or dictates the terms thereof.

*Jackson v. Farmer,* 225 Kan. 732, 739, 594 P.2d 177 (1979). The same general principles apply regarding the interpretation of a gas unitization agreement.

As noted above, plaintiffs' essential argument is that defendant has no rights to formations below the Panoma-Council Grove horizon, because the 1938 unit operating agreement and the 1974 amendment thereto did not perpetuate its rights to geological horizons below the Panoma-Council Grove formation. In support of this argument plaintiffs state the sole purpose of the unit operating agreement was to maximize production from the Hugoton well under the 1938 KCC Order (Ex. L), and to connect this well to a pipeline. Furthermore, plaintiffs contend the 1974 amendment thereto (Ex. G) was agreed to for the sole purpose

of providing an equitable distribution of royalties for unitized production from the proposed Panoma-Council Grove formation well. However, although the 1938 unitization agreement and the 1974 amendment provided for unitized production from these two horizons, the only reasonable interpretation, after examining the four corners of these two documents, is that they also perpetuated the lessee's rights as to all horizons.

■ Plaintiffs' proposed interpretation is unsupported by the applicable case law. They contend the horizontal extent of the leases is limited by the subsequent instruments merely because they provide for unitization of only the Hugoton and Panoma-Council Grove formations. This ignores the following basic legal principles regarding unitization:

The legal results of unitization may be roughly summarized as follows: (1) The life of the lease is extended as to all included tracts beyond the primary term and for as long as oil, gas or other minerals are produced from any one of the tracts included; (2) the commencement of a well on any one of the tracts operates to excuse the payment of delay rentals on all included tracts for the period stated in the respective leases; (3) production from a well on any one of the tracts relieves the obligation to pay delay rentals, during production, on all included tracts; (4) the lessee is relieved of the usual obligation of an implied covenant for reasonable development of each tract separately; (5) wells may be located without reference to property lines; and (6) the lessee is relieved of the obligation to drill off-set wells on other included tracts to prevent drainage by a well on any included tract. (See Hoffman, Voluntary Pooling and Unitization, pp. 135–36, and *South. Royalty Co. v. Humble Oil and Ref. Co.,* 151 Tex. 324, 249 S.W.2d 914.)

*Klippel v. Beinar,* 222 Kan. 681, 685, 567 P.2d 867 (1977). *See also, Somers v. Harris Trust & Savings Bank,* 1 Kan.App.2d 397,

566 P.2d 775 (1977); 5 Summers, Oil and Gas § 959 (1966).

The underlined portions of the unitization agreement provisions quoted in the preceding section above state production from the unitized "area" perpetuates the lessee's rights. The term "tract" as used in *Klippel v. Beinar, id,* and "part" from *Rogers v. Westhoma Oil Co.,* 291 F.2d 726, 730–31 (10th Cir.1961), are synonymous with "area", and thus can apply to both horizontal and vertical divisions. *Id.* In the case at bar nothing in the instruments would abrogate the application of the above general principles to perpetuate plaintiffs' leases beyond their primary term.[2]

### C. The Absence of a "Pugh" Clause

Plaintiffs' contentions here would be convincing if any of the instruments before the Court contained provisions limiting the extension of the leases by virtue of unitization. As Judge Theis noted in *Mesa Petroleum Co. v. Scheib,* No. 80–1131, slip op. at 5 (D.Kan. Dec. 2, 1981): "The extension of the entire lease by production anywhere in the unit is often thwarted ... by inclusion in the lease agreement of what is known as a Pugh clause." The Court cited the following discussion regarding Pugh clauses:

> Because it is objectionable to many lessors that acreage outside the pooled unit should be held indefinitely under the lease addendum clause by production within the unit, lease clauses have been devised to prevent the normal consequences of property law. These clauses, sometimes called 'Pugh' clauses ... vary widely in form, but in effect segregate the lease as to portions within and without the pooled unit, leaving the latter still subject to the primary term obligation, including payment of delay rentals on the reduced outside acreage and with the obligation remaining to drill a producing well in order to put that portion of the lease into its secondary term, held by the production.

5 Summers, Oil and Gas § 960 (1966). Plaintiffs have not contended any of the instruments before the Court contain a Pugh clause in any form, nor has this Court's perusal of the instruments revealed one.

Plaintiffs contend the often-cited Tenth Circuit case of *Rogers v. Westhoma Oil Co.,* 291 F.2d 726 (10th Cir.1961), is a case similar to the one at bar and supports plaintiffs' cause. However, this case clearly illustrates the fatal effect of the absence of a Pugh clause in plaintiffs' leases. In the *Rogers* case, which originated in Kansas, numerous leases in the Hugoton Field were consolidated into 640-acre units. By subsequent assignments, one production company became the lessee of all horizons above sea level, and a second production company became lessee of all horizons below sea level. No production was ever obtained on the leases from horizons below sea level, which were owned by Westhoma. The Tenth Circuit stated the Pugh clauses involved contained the following provisions:

> The Pugh clause lease continuation provisions are found in subparagraph 9(a) which reads that in the event of consolidation the lease shall be continued 'as to

2. Defendant Mobil has not argued an estoppel theory here, though plaintiffs' prior conduct does indicate an intent contrary to the position they now assume. Before drilling a gas well to the Panoma-Council Grove formation in 1974, the parties agreed to amend the 1938 unitization agreement to establish a new and different royalty division for the prospective Panoma-Council Grove well. However, in 1974 the lessors never argued the leases had expired for all formations below the Hugoton horizon. Furthermore, the 1974 amendment contains language identical to provisions of the 1938 agreement perpetuating lessee's rights without horizontal or vertical limitations:

> The production of oil and/or gas and other liquid or gaseous hydrocarbons from said unitized area in paying quantities shall perpetuate the oil and gas rights of Lessee under all of said leases in said entire unitized area and relieve Lessee from all further obligation to drill and/or to pay delay rentals under any and all leases covering lands within said area....

(Ex. G).

the premises covered hereby and included in any such consolidation of estates' by a producing gas well located on a consolidated unit or by oil production from a well on leased land.

Lease termination is covered by subparagraph 9(b) of the Pugh clause which states that the lease terminates at the expiration of the primary term as to any 'tract or tracts not included in a consolidation held in force by production' unless there is production in accordance with other lease terms.

*Id.*, 291 F.2d at 730. The Tenth Circuit noted that the Pugh clause can apply to vertical and horizontal divisions of the leased tracts, and held that since production was never obtained from the below sea level horizons within the primary term, the leases expired at least as to these formations by virtue of the Pugh clauses. Clearly, plaintiffs cannot obtain the same result here, for their leases lack Pugh clauses.

Plaintiffs also cite this Court's decision in *Anadarko Production Co. v. Taylor*, 535 F.Supp. 103 (D.Kan.1982), as further support for their position. However, the issue before the Court in that case is not the same as the issue before the Court now. In *Anadarko* the lessors agreed to consolidate and unitize their tracts so that the production company could formulate a 640-acre unit for a well producing from the Hugoton formation. Subsequently, the production company drilled a second producing well to the Panoma-Council Grove formation on one of the tracts involved in the unit. A dispute then arose between the lessors and the lessee over whether the royalty provisions in the consolidation agreement signed in 1944 would apply to the new well producing from the Panoma-Council Grove formation. After examining the consolidation agreement as well as all of the leases and modifications thereto, this Court held the royalty provisions in the 1944 consolidation agreement applied only to production from the Hugoton well. More importantly for the case at bar, there was never a question raised in *Anadarko* regarding partial termination of the original leases, which were signed as early as 1935, after expiration of their primary term, because production was not obtained from the Panoma-Council Grove formation until 1975. A similar dispute over royalties would probably have arisen between the parties here had Mobil not agreed to amending the original unit operating agreement in 1974 to provide for royalty division for the Panoma-Council Grove well.

█ In considering plaintiffs' contentions, the Court has avoided isolating specific provisions of the instruments involved, but rather has looked to the four corners of the documents. *Tate v. Stanolind Oil & Gas Co.*, 172 Kan. 351, 356, 240 P.2d 465 (1952). Furthermore, the Court must adopt a reasonable interpretation of the instruments over unreasonable interpretations, *Jackson v. Farmer*, 225 Kan. 732, 739, 594 P.2d 177 (1979), and the reasonable interpretation is that plaintiffs' leases were perpetuated as to all horizons.

IT IS THEREFORE ORDERED that plaintiffs' arguments cannot prevail and the summary judgment motion of defendant Mobil Oil Corporation shall be granted. The partial summary judgment motion of plaintiffs is consequently denied.