### MESA PETROLEUM CO.,
**Plaintiff-Appellant,**

v.

Oscar W. SCHEIB and Dorothy M. Scheib, his wife; Robert A. Clark; D.R. Lauck Oil Co., Inc.; Hummon Corporation; Pat Petroleum Co., a limited partnership; Byron E. Hummon, Jr.; Kansas Power & Light Company; Lexington Ventures, a partnership; Glen E. Scheib and Gloria Scheib, his wife; and Charles W. Scheib and Susan Scheib, his wife, Defendants-Appellees.

No. 81–2462.

United States Court of Appeals, Tenth Circuit.

Jan. 23, 1984.

Neil O. Bowman, Amarillo, Tex. (Barry F. Cannaday, Amarillo, Tex., Gerald Sawatzky and R. Douglas Reagan, Wichita, Kan., with him on the brief), for plaintiff-appellant.

Joseph W. Kennedy of Morris, Laing, Evans, Brock & Kennedy, Chartered, Wichita, Kan. (Ferd E. Evans, Jr. and Ralph R. Brock, Wichita, Kan., with him on the brief), for defendants-appellees except Kansas Power & Light Co.

Before SETH, Chief Judge, and DOYLE and LOGAN, Circuit Judges.

SETH, Chief Judge.

This is an appeal from a judgment of the trial court which held that an oil and gas lease in Kansas contained provisions equivalent to a Pugh clause. This conclusion led to a division of the lease into two leases one covering the acreage pooled with other

tracts and the other covering lands not pooled, with a holding that one had expired.

The basic lease provisions should, ordinarily, apply when there is a producing well on the lease as in the case before us, and the lease so extended in its entirety by production. This lease covers 600 contiguous acres. After a commercial well was completed a 200-acre tract out of the lease was pooled with lands of others to form a gas producing unit of 320 acres. The well is located on the 200-acre parcel which was pooled.

The lessor-appellee argues, and the trial court concluded, that the pooling of a portion of the lease with outside acreage brought about a division of the lease, or a segregation of the acreage, into two parts—the portion pooled and that not pooled—as mentioned.

Appellant argues that the lease clauses relied on by the lessor to divide the lease cannot bring about such a result. Instead the clauses are typical of provisions used in leases to permit pooling and with no other implications.

As mentioned, the producing well is within the boundaries of the lease and obviously the entire lease would be held by production if nothing to the contrary clearly appears in the agreement. Thus as stated in 6 H. Williams and C. Meyers, Oil and Gas Law § 953:

> "It appears generally to be held or assumed that in Case III [where part only of Blackacre is included in the unit and production is obtained on the portion in the unit], production on the portion of Blackacre included within the unit is sufficient to keep the lease alive as to all of Blackacre after the expiration of the primary term under the language of the typical 'thereafter' clause, unless the lease or unitization agreement contains a specific provision to the contrary."

The appellees urge and the trial court relied on paragraph 13 of the lease which permits the pooling of all or part of the lease with other acreage to provide this "specific provision to the contrary." We cannot agree.

This paragraph 13 contains a typical provision to cover the possibility that a producing well for the pooled acreage be located not on this lease but instead on the lease of someone else with which it is pooled. This provision states in substance that such a producing well shall be considered as being located on each and all of the lands in the pooled acreage. If it is on all such lands, it has the effect of being on all the leases wholly or partly pooled. This is. a short version of the accepted consequences of pooling—that a well anywhere on the pooled acreage holds all leases which are entirely in the unit or partially in the unit. Thus had production been on the pooled acreage but off the lease it would nevertheless have been regarded as coming from the lease and from each lease. This is an abbreviated version of the language considered in *Somers v. Harris Trust & Savings Bank,* 1 Kan.App.2d 397, 566 P.2d 775 (1977). There the agreement contained more detail as to the legal effect on each lease but in substance was the same. In *Somers* the court said:

> "We hold production within the unit, although not on the eighty acres in the unit, extended the 1949 lease beyond its primary term . . . ."

This is the rule in Kansas, and it is the majority rule as to construction of typical pooling provisions.

Thus under the Kansas rule we must start from the position that production anywhere on the pooled acreage holds all leases that may be wholly or partly in the unit. The court in *Somers* said that:

> "The rule is based on conservation and public policy. Its rationale starts with the proposition that an oil and gas reservoir does not abide by man-made boundaries . . . ."

This position as to such a basic matter as the duration of a lease and a matter of public policy cannot be overcome by implication. Instead, to bring about a contrary result, the lease clauses must be clear and explicit to direct a division of the lease into several parts, and directing that production

on the pooled portion does *not* constitute production on the part not pooled. Such provision which modifies the habendum clause and which so divides the lease must be obvious, clear and direct. There is no such provision in the lease before us.

The lease must be considered as a whole under *Jackson v. Farmer*, 225 Kan. 732, 594 P.2d 177 (1979).

An example of such an explicit clause would read something like this:

Upon the pooling of less than all of the leased land as above provided, this lease shall be severed and shall be considered as separate and distinct leases on separately pooled acreage and on unpooled acreage, as the case may be, and the term of this lease and all the rights and obligations of Lessee under this lease shall apply separately to separately pooled acreage and to unpooled acreage under this lease.

Or:

Anything in this lease to the contrary notwithstanding, actual drilling on, or production from, any unit or units including lands herein leased and other land, shall maintain this lease in force only as to that portion of Lessor's land included in such unit or units, whether or not said drilling or production is on or from the leased premises. This lease may be maintained in force as to the remainder of the land in any manner specified in this lease.

Or as in the lease considered in *Fawvor v. U.S. Oil of Louisiana, Inc.*, 162 So.2d 602 (La.App.1969) (cited by the trial court herein):

" '15. Notwithstanding anything to the contrary herein contained, drilling operations on or production from the pooled unit or units established by the Commissioner of Conservation embracing land covered hereby and other land shall maintain this lease in force only as to the land included in such unit or units, whether the operations be on the land covered by this lease or on other lands in the unit. The lease may be maintained in force as to the remainder of the land in any manner herein provided for, provided that if

it be by rental payments, rentals shall be payable only on the number of acres not included in such unit or units . . . . ' "

The lease considered by this court in *Rogers v. Westhoma Oil Co.*, 291 F.2d 726 (10th Cir., 1961), as we there said, provided:

"Lease termination is covered by subparagraph 9(b) of the Pugh clause which states that the lease terminates at the expiration of the primary term as to any 'tract or tracts not included in a consolidation held in force by production' unless there is production in accordance with other lease terms."

A severance of the lease thus comes about only by an explicit clause so directing. It does not result, as the lessor here argues, by implication.

We have also considered the proviso which is part of, but follows, the pooling clause quoted above. The lessor places great emphasis on this clause to demonstrate a severance of the lease into two parts. The proviso reads:

". . . provided, that the provisions of this paragraph shall not affect the payment or non-payment of delay rentals with respect to portions of this premises not included in a unit."

The proviso in stating that the pooling clause does not affect either the "non-payment" or "payment" of delay rentals (outside the pooled area) in substance says that the clause has nothing to do with such rentals. These rentals are thus controlled by other portions of the lease before us. The rentals were paid for the entire acreage and the well was drilled on the lease. There was no delay rental issue. This proviso cannot by implication sever the lease.

As mentioned, a commercial well was completed on the lease before any portion of it was consolidated to create a gas unit. The well was shut-in because there was no pipeline connection. The lease contemplated such a situation by providing for shut-in royalty payments. These were paid by the lessee and accepted by the lessor before the end of the primary term. The payment covered the entire acreage in the lease. At

the time this shut-in royalty was paid the portion of the lease on which the well was located had been consolidated with outside acreage to create the gas unit. The well was produced for the first time after consolidation. The treatment by the parties of the shut-in royalty provision of the lease after consolidation is a significant construction of the lease and demonstrates that they did not then consider it severed. It also shows the importance of the fact that the producing well was on the lease itself.

The lessee continued development of the lease by drilling a well in August after the primary term had expired in June. This was outside the pooled area. It did not result in a commercial well. Another location was staked again on the lease and outside the pooled area, but this time the lessor objected and advanced the arguments herein considered.

The position taken by the lessor is contrary to the Kansas rule which is that a commercial well in the pooled area extends the leases in their entirety. There is no indication that this can be overcome by anything short of an explicit lease provision directing for severance. *Somers v. Harris Trust & Savings Bank,* 1 Kan.App.2d 397, 566 P.2d 775 (1977).

The opinion in *Somers* points out the relationship between the holding as to the perpetuation of the leases and the matter of implied covenants. The same observation can be made here.

REVERSED and REMANDED.