No. 24,624.

JOHN W. BAUGHMAN, *Appellee and Appellant,* v. J. G. AULT et al., *Appellants and Appellees.*

No. 24,625.

H. H. DUNLAP, *Appellee and Appellant,* v. J. G. AULT et al., *Appellants and Appellees.*

No. 24,626.

L. H. LAYTON, *Appellee and Appellant,* v. J. G. AULT et al., *Appellants and Appellees.*

### SYLLABUS BY THE COURT.

OIL AND GAS LEASE—*Neglect in Commencing Drilling Operations—Action for Cancellation—No Ground for Cancellation Proven.* Where an oil and gas lease provides that drilling operations shall be commenced within six months from the date of the lease on land within fifteen miles of the property described therein unless a specified rental is paid, and where drilling operations are commenced within that time and distance and those operations are prosecuted with reasonable diligence, it is error to render judgment cancelling the lease unless drilling operations are commenced on the premises described in the lease within a specified time after the judgment is rendered.

Appeals from Seward district court; CHARLES E. VANCE, judge. Opinion filed March 8, 1924. Reversed.

*G. W. Sawyer, John C. King,* and *Eugene W. Davis,* all of Liberal, for the appellants and appellees.

*G. L. Light, F. O. Rindom,* and *H. A. Gaskill,* all of Liberal, for the appellees and appellants.

The opinion of the court was delivered by

MARSHALL, J.: In each of these actions the plaintiff asked the cancellation of an oil and gas lease on certain real property in Seward county. Judgment was rendered in favor of the plaintiff in each action cancelling the oil and gas lease unless actual drilling for oil be commenced in good faith on or before March 1, 1923, upon the premises described in the lease. The court retained jurisdiction for the purpose of cancelling the lease in case drilling should not be commenced within that time. The defendants in each case appeal from the judgment cancelling the lease, and the plaintiff in each case appeals from that part of the judgment giving the defendants until March 1, 1923, in which to commence drilling. The

defendants in each of the actions demurred to the evidence of the plaintiffs. The demurrer in each case was overruled. The defendants did not offer any evidence in any of the cases.

The plaintiffs are the owners of the real estate involved in the actions and derive their title from those who gave the leases thereon. The defendants are assignees or successors in interest of the original lessees. Each lease was to the lessees, their successors and assigns. Each of the leases, dated in November, 1916, contains the following provisions:

"To have and to hold the same unto the said party of the second part, their successors, heirs and assigns, for the term of ten years from the date hereof, and as long thereafter as oil, coal, gas and any other minerals is being produced therefrom by said lessees. . . .

"Provided, however, that if operations are not started on said premises or within fifteen miles of said premises within six months, from the date hereof, by second party or their associates, then this lease and agreement shall be null and void, unless the party of the second part within each and every year after the expiration of the time above mentioned for starting operations shall pay a rental of ten cents per acre until operations are started thereon, or until this lease is canceled, as hereinafter provided.

"And it is agreed that the starting of operations shall be and operate as a full liquidation of all rental under this provision during the remainder of this lease, all rentals and other payments may be made direct to parties of the first part or may be deposited to their credit at some designated bank."

Drilling operations with a "Star rig" were commenced in April, 1917, and a well was drilled to a depth of 450 feet. It was discovered that a "Star rig" was not suitable for drilling in that territory, and work was suspended thereon in September, 1917. Arrangements were made for drilling with a "Standard rig." Such a rig was unloaded and set up in December, 1917, and drilling was commenced in March, 1918, near the first well, which was then used for a water well. With the "Standard rig," a well was drilled at an expense of more than $175,000 to a depth of 2,718 feet where gas was found in sufficient quantities to operate the machinery in drilling another well, which was later started and was being drilled at the time of the trial.

The original lessees obtained a number of leases from the owners of the land in the vicinity of the lands in controversy. Through assignment of leases and part interest in leases, incorporation and contracts, the details of which are immaterial, an arrangement was made by which a well was commenced within fifteen miles of the real property described in each of the leases on which these actions

are based. No rentals were paid and no drilling was commenced on any of these properties. The plaintiffs contend that for that reason the leases were forfeited. The defendants contend that by reason of the well being drilled within fifteen miles of each of these properties, the leases were complied with and were not forfeited.

This court is unable to see why the operations described did not comply with the terms of the leases. The leases should not have been canceled, and the judgments entered were erroneous. This disposes of the cross-appeals of each of the plaintiffs.

The judgments are reversed, and the trial court is directed to enter judgments for the defendants.