No. 26,495.

CORTEZ H. PHILLIPS, *Appellee*, v. HENRY BERG et al., *Appellants*.

SYLLABUS BY THE COURT.

MINES AND MINERALS—*Oil and Gas Leases—Commencement of Operations.* In an action to quiet title against the holders of an oil and gas lease, the proceedings considered and held to present no substantial error.

Appeal from Seward district court; CHARLES E. VANCE, judge. Opinion filed March 6, 1926. Affirmed.

*G. L. Light* and *F. O. Rindom,* both of Liberal, for the appellants.
*M. F. Cosgrove,* of Liberal, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to quiet title against an oil and gas lease. Plaintiff prevailed, and defendants appeal.

On February 22, 1917, H. A. Nemnich, who owned a quarter section of land in Seward county, executed the lease in question to J. C. Mahoney and others. Among other things it provided:

"To have and to hold the same unto the said parties of the second part, their successors, heirs and assigns, for the term of ten years from the date hereof and as long thereafter as oil, coal or any other mineral is being produced therefrom by said lessees. . . . Provided, however, that if operations are not started on said premises, or within five miles thereof, within twelve months from the date thereof, then this lease and agreement shall be null and void, unless the parties of the second part, within each and every year after the expiration of the time above mentioned for starting operations, shall pay a rental of ten cents per acre until operations are started thereon or until this lease is canceled as hereinafter provided. And it is agreed that the starting of operations shall be and operate as a full liquidation of all rentals under this provision during the remainder of this lease."

On February 13, 1918, the lessors extended the lease 180 days.

The case was tried on an agreed statement of facts, the chief question being whether the work of starting a water well constituted "commencement of operations" within the meaning of the lease so as to relieve the lessees from payment of rentals, none having been paid. The extension of time for beginning operations expired August 22, 1918. On July 16 or 17 two loads of sand were hauled to the location selected for the water well. On July 19 a load of cement and cement staves was hauled to the same location. The cement and

Mines and Minerals, 27 Cyc. p. 729 n. 79.

cement staves were for use in the erection of a tank which was intended to be used, first, to hold water for use in drilling a water well, and second, to hold water to be pumped from the well and used in the drilling of an oil or gas well at or near the same location. Drilling for the water well was begun August 17 and completed about September 12. In December, 1918, and January, 1919, derrick timbers were hauled and placed upon the same location. During the summer of 1919 a derrick was erected to be used in the sinking of a test well, and about March 18, 1920, drilling was actually commenced at the location. The drilling operations continued for a short time only. The well caved in and the hole was ruined. Some weeks later the derrick and machinery were removed to another location fifty feet distant, but nothing further was done in the way of drilling until April, 1921, when drilling operations were resumed and continued for a time. The well was again shut down and remained so until July, 1922. Drilling operations were again resumed and the hole drilled to a depth of 2,427 feet, when the casing parted. A large number of tools and foreign matter were lodged in the hole while fishing for the casing. In September, 1922, the operations were again shut down and remained so until the early part of 1923. On March 18, 1925, drilling had reached a depth of 2,641 feet, when a fairly good flow of gas was found.

On August 31, 1920, the owner of the land in controversy filed a forfeiture notice of the lease for record. On September 25, 1920, notice of nonforfeiture was filed for record.

From the statement of facts we glean that practically the only work done toward the drilling of an oil well within five miles of plaintiff's land within the time limit, was the hauling of the sand and cement in July, 1918. The statement does not show that the sand and cement were used in the drilling of a well. It does not show that the water well was ever used for the purpose of drilling an oil well. Even had a tank been made from the sand and cement which were hauled July 17, or had the water well which was completed on September 12 been used in drilling the oil well, the actual commencement of work on the oil well which was finally drilled to its completion was so far removed from the completion of the water well as to justify the trial court in concluding that there was no sufficient compliance with the requirements of the lease. No continuous work was done in the meantime which could be said to connect the original efforts with the drilling operations which resulted in the gas well

of 1925. Actual drilling operations on the completed well were not commenced until April, 1921, at which time it continued for only a short time, and was not again resumed until July, 1922. It was almost four years from the time that the operations should have been commenced under the terms of the lease, until *bona fide* drilling operations were actually commenced.

The judgment is affirmed.