# Durbin et al. v. Osborne et al.

Oct. 20, 1942.

Shumate & Shumate for appellant.

John W. Walker for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing in part, affirming in part.

This is a suit by the grantors of an oil and gas lease of 116 acres in Estill County to recover rentals at the rate of $1 a day for delay in completing a well. The lessors are the appellees, Robert Osborne and his ten children, and the lessees are the appellants, James M. Durbin and James D. Crabtree. The lease, dated June 28, 1938, contains the following provisions:

"First—lessees agree to drill a well upon said premises within 40 days from this date, or thereafter pay to lessors rentals as hereinafter provided until a well is completed or the property hereby granted is reconveyed to lessors.

"Fifth— * * * * In the event a well has not been begun on the premises within 40 days from the date hereof (unavoidable accidents and delays excepted), the lessees may thereafter pay a yearly rental of $1.00 per day, payable quarterly in advance until a well is completed, which payments for delay in completing well may be made direct to Robert Osborne or deposited to —— credit in the —— bank, which payments shall fully and completely extend this lease from time to time until a well is completed, and lessors agree to accept said payments of rentals when made and to mail receipts for same to the lessees."

The petition as amended sought to recover $1,003 upon the allegation that the lessees had never completed a well. Material issues were joined as to the beginning and completion of a well, and a trial entered upon. The evidence disclosed that a well had been drilled on the land in 1919 and oil discovered but not in marketable quantity, so it had been abandoned. About two weeks after this lease was executed the lessees moved their drilling machinery and other equipment to the site of the old well and proceeded at once with extensive work there in removing old casing, cleaning out the well, and doing some reaming. They then drilled the well 16 feet deep-

er. Several months were spent in endeavoring to make something out of the well. It was repeatedly pumped and made a little oil from time to time, but intermittently produced nothing but water. Durbin, one of the lessees, testified that it was "just enough to keep us working at the thing." Finally, the effort was given up and a new well started elsewhere in April, 1939. Much trouble was encountered here, including inclement weather, the striking of a cave and the loss of tools on several occasions. This well was drilled to the oil-bearing sand in October, 1940, but produced nothing. It was plugged and abandoned as a dry hole. The lessees contended in their evidence that the lessors had verbally agreed they should "try to make a well out of the old one" before starting a new well. Robert Osborne, to whom the rentals were payable and who it was claimed made the agreement, testified merely that he did not remember it. He further testified that before the lease was executed it was the intention to try to make something out of the old well, and in this he is corroborated by one of his sons, who, however, testified that the 40-day period specified in the lease allowed ten days to cover that effort. Robert Osborne lived on the place and worked for the lessees in their operations. None of the parties ever suggested that this effort was not a compliance with the terms of the lease in respect to beginning to drill or asked payment of the rental, which, as stated, was payable quarterly in advance.

An amended answer was filed to conform to the defendants' proof and the case was submitted to a jury upon the issue of the existence of the verbal agreement. The verdict was for the plaintiffs in the sum of $745, which was the rental beginning 40 days from the date of the lease to October 1, 1940, the date the court regarded the new well as having been completed, less $40, for which deduction there is no basis. The defendants appeal and plaintiffs cross appeal. Each group argues they were entitled to a judgment as a matter of law, the defendants insisting that no judgment should have been rendered against them, and the plaintiffs insisting they were entitled to recover the full amount prayed, which is based upon the theory the dry well completed in October, 1940, was not a "completed well," since no oil was obtained. Under the conclusion we have reached, we need to consider only one question.

Obviously, the primary purpose of the owners of the land was to secure its development in expectation of royalties. In order to obtain that promptly, the quite heavy rental of $1 per day was stipulated for delay. We construe the provisions of the lease above quoted to mean that if the lessees began drilling within 40 days they did not have to pay any rental; if they did not begin within that time rent began to accrue and continued until a well should be completed. This was an absolute obligation of the lessees of which they could be relieved only by a reconveyance of the lease, except as the contract might perhaps be affected by the terms of Ky. Rev. Stats. 353.020 (Section 3766b-4, Ky. Stats.). See Bradshaw v. Hurt, 198 Ky. 38, 247 S. W. 1113; James v. Deskins, 278 Ky. 570, 129 S. W. (2d) 129.

Putting aside the claim of the verbal agreement, the question is whether the work with and the deepening of the old well, which had been abandoned 19 years before, was the equivalent of beginning to drill a well as provided for in the lease. What constitutes beginning of a well is determined from the facts and circumstances of each case. 40 C. J. 1068. Particular clauses of a lease are to be read in the light of their purpose. Those involved here were primarily to obtain early exploration, and secondly to afford for the lessees a privilege of delay, and to provide for the lessors compensation or liquidated damages therefor. The construction of such provisions is generally that the obligation is met where the lessee within the stipulated time makes substantial preparation for drilling, such as placing derrick timbers, establishing machinery and equipment at the site, wholly or partly, and for proceeding with the drilling, even though the actual drilling begins after the date had passed; but it has been held that commencing to drill means the first movement of the drill in penetrating the ground. Willis' Thornton on Oil and Gas, Sections 201, 1281. See in addition to cases therein cited Henderson v. Ferrell, 198 Pa. 547, 38 A. 1018; Smith v. Gypsy Oil Co., 130 Okl. 135, 265 P. 647. The term "beginning of operations to drill," and similar phrases are the equivalent of the provision "begin to drill." McCallister v. Texas Co., Tex. Civ. App., 223 S. W. 859; Robinson v. Gordon Oil Co., 258 Mich. 643, 242 N. W. 795; Wilcox v. West, 45 Cal. App. (2d) 267, 114 P. (2d) 39.

The element of good faith is an important consideration in determining when drilling or other development shall be deemed to begin or to have begun. Willis' Thornton on Oil & Gas, Section 164. Cf. Warfield Natural Gas Co. v. Allen, 248 Ky. 646, 59 S. W. (2d) 534, 91 A. L. R. 890. When that appears a substantial compliance with the terms of the contract as to time to commence to drill is sufficient. 40 C. J. 1068. In Flanigan v. Stern, 204 Ky. 814, 265 S. W. 324, the lease provided that if no well should be commenced on or before a specified date, the lease would terminate unless the lessee on or before that date should pay or tender a certain sum as rental and to cover the privilege of deferring the commencement period two months. Before the day specified, the lessee had sunk his drill into the ground four to six feet, which is generally called "spudding in" and regarded as only a gesture towards drilling a well. Nothing more was done, the equipment being moved away, at least temporarily. We held there was a forfeiture of the lease, being influenced, if not controlled, by the apparent absence of good faith and the failure of the lessee to prosecute the work with reasonable diligence. Of like effect is Phillips v. Berg, 120 Kan. 446, 243 P. 1054.

In the case at bar the lessees' good faith in exploring or beginning to develop the lease cannot be doubted. Eliminating from consideration the persuasive, if not conclusive, evidence of an express agreement to accept the restoration and deepening of the old well in lieu of the beginning of a new one, the facts justify the implication that there was an extension of time for such new development. Willis' Thornton on Oil & Gas, Section 165; 24 Am. Jur., Gas & Oil, Section 76. If the acquiescence by the lessors of the delay in beginning of a new well because of the exploring of possibilities of and the drilling deeper of the old well be not a valid consent, waiver or estoppel (Cf. Lacer v. Sumpter, 198 Ky. 752, 249 S. W. 1026), it fortifies our construction of the provisions in respect thereto as being the true intention of the parties, and our conclusion that the lessees met their obligation to begin to drill a well on the premises within forty days. We are of opinion, therefore, that the court should have directed a verdict for the defendants.

Judgment reversed on original and affirmed on the cross appeal.