(668 P.2d 200)
No. 54,478

EDMUND HERL & LOUISE HERL, *Appellees,* v. JULIUS A. LEGLEITER, *et al., Appellants.*

Opinion filed August 25, 1983.

*Gregory J. Herrman,* of Hays, for the appellants.

*Michael S. Holland,* of Russell, for the appellees.

Before FOTH, C.J., REES and SPENCER, JJ.

FOTH, C.J.: After bench trial the trial court found that the oil and gas lease in question here had expired because the lessees had failed to "commence" a well within the one year primary term. The defendant lessees appeal, contending primarily that certain preliminary steps taken in anticipation of drilling were sufficient to constitute commencement of a well under the terms of the lease.

On March 27, 1980, lessors Edmund and Louise Herl and lessee Julius A. Legleiter entered into an oil and gas lease covering 80 acres of land in Ellis County, Kansas. Legleiter subsequently sold participating interests to a number of other persons who were joined in this suit as lessees-defendants. The lease was a standard Kansas Producers 88 which provided for a primary term of one year and also:

"If no well be commenced on said land on or before the 27th day of March, 1981, this lease shall terminate as to both parties . . . ."

It further provided:

"If the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion, with reasonable diligence and dispatch . . . ."

On March 27, 1981, no drilling rig was on the lease. However, certain preparations for drilling had been made, including construction of an access road, staking of the location, construction of

pits at the site and delivery of mud to the well site and of stem and casing pipe to a location off the lease but accessible to it.

On that day, a Saturday, lessor Edmund Herl wrote a check to lessee Legleiter in payment for a 1/32nd working interest in the lease. On the following Monday, March 29, 1981, Herl stopped payment on the check. On April 7, 1981, there having been no activity on the lease, Herl filed this suit.

The trial court made extensive findings of fact. It concluded that under the law of Kansas, making preparations to drill does not constitute commencement of drilling where the lessee neither owns a drilling rig nor has one under contract. It therefore declared the lease terminated by its own terms. Lessee filed a motion to set aside the judgment or in the alternative for a new trial. At the end of the hearing of that motion the trial court denied the motion, repeating and expanding its previous analysis of the Kansas case law. It also, however, made an incidental finding that Legleiter had acted in good faith in making preparations for drilling.

In its findings of fact, which are unchallenged, the trial court related the history of the dealings between the lessor Herl and the lessee Legleiter, and also those between Legleiter and Montgomery Exploration, Inc., the drilling company utilized by Legleiter in his operations. We summarize:

The lease here in question covered the west ½ of a quarter section. Herl gave a similar lease to Legleiter at the same time covering the east ½. Legleiter drilled on the east ½ (Herl No. 1) in January, 1981, using Montgomery's rig. When that well was finished both leases had just over two months to run.

From Herl No. 1 the rig went to four other locations and drilled four wells between January 24 and March 8, 1981. The last of the four was on land owned by Legleiter.

At the conclusion of Legleiter's own well he still had 19 days to commence drilling Herl No. 2 on this lease. The Montgomery rig, however, was moved to Rooks County where it drilled a well which was finished March 23, 1981. From there, although this lease still had four days to go, the rig moved to another well in Rooks County, drilling from March 24 to April 16, 1981. By this time the Herl lease deadline had expired.

The court found that although Legleiter had entered into preliminary negotiations with Montgomery to drill Herl No. 2,

he had no firm commitment from them and no written contract with them as required by their policy. Further, he had no rig of his own and no access to another rig. After the lease deadline of March 27, 1981, and until suit was filed he made no effort to secure a rig from either Montgomery or anyone else.

It was this failure to have a drilling rig or any arrangements to get one which the trial court found fatal to the lessees' claim to have commenced a well by the last day of the primary term. In so finding the court placed primary reliance on *Shoup v. First Nat'l Bank,* 145 Kan. 971, 67 P.2d 569 (1937). There escrowed leases were to be delivered to the lessee if he should "commence operations for the drilling of a test well" within five days of an extension agreement, or by July 29, 1935. Prior to the agreement the site had been staked and a cellar dug. Within the five days "some rig timber, band wheel, walking beam, rig bottom timbers, Sampson post, and some other similar equipment was placed on the location." 145 Kan. at 974. The problem was that the lessee had only an oral contract with a driller, who in turn was still looking for someone with tools when the five days expired. The lessee eventually found someone equipped to drill. In October a new cellar was dug, and the well was spudded (*i.e.,* the drill bit first penetrated the ground) November 1, 1935.

It was there contended that the hauling of the materials to the site within the five days constituted the commencement of operations. The court noted several cases from other jurisdictions which might support such a contention, and also earlier Kansas cases which seemed to ascribe a more restrictive meaning to the "commencement" of operations. It then concluded:

"The testimony shows clearly that Swearer or his assigns were looking for someone with adequate equipment with whom they could contract for drilling the well, and that from about July 29, 1935, when the first load of equipment was dumped, until about October 23, 1935, nothing was done, and that the well was not spudded until November 1, 1935. *It may be doubted that the dumping of some usable and useful equipment on a location by one who has no intention of drilling a well himself, but expects it to be used by some one with whom he may contract thereafter for drilling of a well constitutes, in any sense, a commencement of operations for drilling of the well,* but assuming that it does, and giving to appellant the benefit of every inference of the evidence adduced by him, it fails utterly to show that the 'operations' so commenced were continued with due diligence to completion." 145 Kan. at 978-9. Emphasis added.

The lessees here point out that the emphasized language is dictum, since the case was actually decided on the ground that

the lessee there didn't pursue the drilling with due diligence even if it were assumed that the preparatory steps amounted to "commencement" of operations. While that is true, the dictum strikes us as very strong, and fully supportive of the trial court's finding in this case of "no commencement."

Further, the lack of diligence relied on by the court in *Shoup* was found despite the lessee's strenuous efforts to find a contractor to drill. As the court put it:

"Here such diligence as was shown between July 28 or 29, when the rig timbers, etc., were placed on the location, and about the date the second cellar was dug, was to find a driller with equipment, and not to prosecute the operation started when the first materials were delivered." 145 Kan. at 979-80.

In this case, not only did the lessee not have a driller with a rig, but after the preparatory steps did not even look for one. In this case, as in all cases we have found where the issue has been considered, the duty to commence is accompanied by a duty to continue operations with due diligence. If, as the *Shoup* court did, we give lessees the benefit of assuming that the preparatory steps were the commencement of drilling, the fact remains that after such "commencement" *nothing* took place, either on the lease or off. Lessees can point to no activity after March 27, 1981, which demonstrates any effort on their part to continue the well to completion, even if we assume it was commenced.

The trial court's post-judgment finding of Legleiter's good faith did not affect the result in the trial court's mind, nor does it in ours. Legleiter may in good faith have attempted to commence a well, but as a matter of fact the steps he took fell short of accomplishing what he was attempting to do.

The lessees' claim of estoppel cannot be sustained. First, the issue was not presented to the trial court until the post-judgment motion. Second, there is no showing of any action lessees took in reliance on Herl's check. See *Lines v. City of Topeka*, 223 Kan. 772, Syl. ¶ 4, 577 P.2d 42 (1978).

There are a number of things we are not called upon to decide in this case. One is whether a well must be spudded to be commenced. Other states differ on this question; our court has not addressed it but in its only three cases on "commencement" has apparently assumed that something less might constitute commencement, at least of drilling "operations." *Shoup v. First Nat'l Bank*, 145 Kan. 971; *Phillips v. Berg*, 120 Kan. 446, 243 Pac.

1054 (1926); *Hennig v. Gas Co.*, 100 Kan. 255, 164 Pac. 297 (1917). Another is whether there is a meaningful difference between such terms as "commence to drill a well," "commence operations to drill a well," and "commence drilling operations." See, *e.g.*, *Solberg v. Sunburst Oil & Gas Co., et al.*, 73 Mont. 94, 235 Pac. 761 (1925). A third is the result if a lessee commenced drilling operations in good faith, with rig committed, and then could not carry through promptly because of weather or other circumstances beyond his control.

We conclude only that the trial court's finding that lessees had not commenced to drill a well within the primary term of the lease is not erroneous as a matter of law, and it did not err in finding that the lease had expired by its terms.

Affirmed.