(715 P.2d 1295)
No. 57,948

A & M OIL, INC., *et al.*, *Appellees*, v. L. LYNN MILLER, *et al.*,
*Appellants*.

Opinion filed April 3, 1986.

*John T. Bird*, of Robert F. Glassman, P.A., of Hays, for the appellants.

*Jeffrey A. Shadwick* and *Robert Hall*, of Hall, Turner and Pike, Chartered, of Wichita, for the appellees.

Before BRISCOE, P.J., RALPH M. KING, JR., District Judge, assigned, and DAVID S. KNUDSON, District Judge, assigned.

BRISCOE, J.: Plaintiffs, A & M Oil, Inc., and A & M Leasing (hereinafter A & M), filed a declaratory judgment action asking the trial court to determine A & M's interest in oil and gas leases obtained from the defendants, Francis and Joseph Cadoret, d/b/a Cadoret Oil Company, Douglas and Barbara Cunningham, and John and Cheri Wiehl (hereinafter landowners). The trial court concluded that A & M had commenced drilling operations within the one-year term of the leases, thereby extending the leases under the drilling operations clause contained in each lease.

The landowners contend the trial court erred in concluding the leases were extended by commencement of slant drilling operations on an adjacent lot.

The landowners argue that, in order to commence drilling under the terms of their leases, A & M must physically enter the leased premises within the primary term of the leases. A & M counters by arguing physical entry of the leased premises is not

required, and that their commencement of slant drilling within the primary term was sufficient to extend the lease.

All three leases had a primary term of one year, plus a drilling operations clause which reads:

"Notwithstanding anything in this lease contained to the contrary, it is expressly agreed that if lessee shall commence operations for drilling at any time while this lease is in force, this lease shall remain in force and its terms shall continue so long as such operations are prosecuted and, if production results therefrom, then as long as production continues."

This brings us to the issue in this case—Were A & M's actions sufficient to "commence operations for drilling" within the one-year term of the leases?

Four Kansas cases have addressed the "commencement" issue; none, however, involve the slant drilling issue posed by this case. *Shoup v. First Nat'l Bank*, 145 Kan. 971, 67 P.2d 569 (1937); *Phillips v. Berg*, 120 Kan. 446, 243 Pac. 1054 (1926); *Hennig v. Gas Co.*, 100 Kan. 255, 164 Pac. 297 (1917); *Herl v. Legleiter*, 9 Kan. App. 2d 15, 668 P.2d 200 (1983). While both parties strain to analogize these cases to the present factual situation, we do not find these arguments helpful. We approach this issue instead by concentrating on the court's analysis and by examining the language of the drilling operations clause in light of the rules for construing oil and gas leases.

The Cadoret lease was executed on April 7, 1982. The Cunningham and Wiehl leases were executed on April 8, 1982. Unless drilling was commenced before April 8, 1983, and April 9, 1983, respectively, the leases expired by their own terms. The three leases covered property within the H-8 drilling unit and were pooled with other property in that unit. Since A & M was unable to purchase and move a house that was located in the center of the drilling unit, A & M decided to utilize slant drilling from an adjacent unit, H-9, to reach the leased properties.

A & M took the following action in pursuit of its slant drilling of H-8: On April 5, 1983, A & M received a license from the City of Stockton to directionally drill the H-8 unit from an adjacent vacant lot in the H-9 drilling unit. On April 6, A&M also received a permit from the Kansas Corporation Commission authorizing the directional drilling. On April 4, the H-9 drilling site was prepared and on April 6 the drilling rig was erected and an 88-foot hole was drilled. Drilling progressed at the following rate: on April 7, the hole reached 1240 feet; April 8, 1420 feet;

April 9, 1585 feet; and on April 10, 2000 feet. On April 11, the drill bit penetrated the vertical plane of the H-8 drilling unit. The hole was bottomed on April 15, 1983, and resulted in a producing well.

There is no dispute that by commencing on April 6, 1983, the drilling on H-9 commenced within the primary term of all three leases. However, the landowners point out that the H-8 property line was not penetrated until April 11, 1983, which was *after* all three leases had expired.

When construing oil and gas leases, we are guided by the following well-established rules:

"Among the familiar rules governing the construction of oil and gas leases are these: the intent of the parties is the primary question; meaning should be ascertained by examining the document from all four corners and by considering all of the pertinent provisions, rather than by critical analysis of a single or isolated provision; reasonable rather than unreasonable interpretations are favored; a practical and equitable construction must be given to ambiguous terms; and any ambiguities in a lease should be construed in favor of the lessor and against the lessee, since it is the lessee who usually provides the lease form or dictates the terms thereof. [Citations omitted.]" *Jackson v. Farmer,* 225 Kan. 732, 739, 594 P.2d 177 (1979).

In applying the above rules of construction to drilling operations clauses, courts have focused attention on two factors: (1) preliminary steps taken by the lessee toward commencing to drill the well; and (2) the lessee's due diligence in pursuing completion of the well. Consideration of these two factors balance the interests of the lessor and lessee and reflect their intent in including a drilling operations clause. In the case at bar, we focus our attention on A & M's efforts to commence. As the landowners correctly point out, whether A & M pursued production with due diligence after commencement is irrelevant to our issue of timely commencement.

In the present case, A & M committed significant resources toward obtaining production from the H-8 drilling unit within the one-year lease period. Preliminary actions to obtain authorization for slant drilling, as well as the commencement of slant drilling, occurred within the lease period. Although the rig was erected and drilling initiated on H-9, the pre-planned destination of the slant drilling was H-8. We cannot agree with the landowners in their assertion that A & M must conduct some physical activity on the leased property in order to commence

drilling operations. The leases are unambiguous and cannot be read to require physical entry. The trial court's finding that the leases were extended under the drilling operations clause is correct.

Affirmed.