(893 P.2d 837)
No. 71,832

JOHN L. HALL, *Appellant*, v. JFW, INC., *Appellee*.

Opinion filed April 7, 1995.

*Jeff Kennedy*, of Martin, Pringle, Oliver, Wallace & Swartz, L.C., of Wichita, for appellant.

*Tino M. Monaldo*, of Tino M. Monaldo, Chartered, of Hutchinson, for appellee.

Before LARSON, P.J., ROYSE, J., and JEAN F. SHEPHERD, District Judge, assigned.

SHEPHERD, J.: John Hall, lessor, and JFW, Inc., lessee, entered into an oil and gas lease on August 3, 1990. The lease provided in pertinent part:

"If no well be commenced on said land on or before August 3rd, 1991, this lease shall terminate as to both parties . . . .

"If the lessee shall commence to drill a well within the term of this lease . . . the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch."

The lease was altered after it was recorded. The altered lease stated it was entered into on August 13, 1990, and stated the well must be commenced on or before August 13, 1991.

The lease also contained a delay rental clause, but JFW did not timely tender payment.

JFW performed the following activities on the Hall lease:

10-22-90: Title opinion
3-30-91: Measured and staked location for well
4- 2-91: Surveyed elevation of site
6-25-91: Received KCC approval of intent to drill

June/July 1991:
> Talked with geologist
- 7-18-91: Received bid for drilling mud
- 7-20-91: Reached verbal agreement with Duke Drilling to drill well; tentative date set for late July or early August
- 7-24-91: Restaked location for well

More than three days before 8-6-91:
> Told Duke Drilling to get rig on lease.
- 8-10-91: Signed written contract with Duke Drilling Agent of Duke Drilling dug drilling pits and leveled location
- 8-11-91: Drilled water supply well
- 8-12-91: Prepared rotary hold and run-around
- 8-12-91: Duke Drilling picked up surface casing
- 8-14-91: Duke Drilling moved drilling rig onto lease and spudded well

8-14-91 to 8-20-91:
> Well dug to 3,000 feet; production casing installed and cemented

8-20-91 to 9-3-91:
> Cement allowed to cure
- 9- 3-91: Ready to move completion rig onto lease.

Prior to completion of the well, Hall sought a determination that the lease had terminated and requested a temporary restraining order preventing JFW from entering the lease. On September 3, 1991, a temporary restraining order was issued. The trial court later denied a temporary injunction and determined the well had been commenced by August 3, 1991. This court reversed the judgment after finding the trial court prematurely had decided the merits of the case.

Upon remand, the parties completed discovery and filed motions for summary judgment. The trial court found JFW had a "firm commitment" from Duke Drilling prior to the commencement deadline and therefore determined JFW had commenced the well prior to expiration of the lease, and entered summary judgment for JFW.

Hall argues the trial court erred in finding a well had been commenced prior to the lease termination date. He argues the preliminary steps taken in anticipation of drilling were not sufficient to constitute commencement of the well under the terms of the lease. We agree.

Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the nonmoving party. The same standard is applied on appeal, and summary judgment must be denied where reasonable minds could differ as to the conclusions drawn from the evidence. See K.S.A. 60-256(c); *C.J.W. v. State*, 253 Kan. 1, 16, 853 P.2d 4 (1993).

This court is not bound by the trial court's interpretation of the written contract. *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, 680, 829 P.2d 884 (1992). The rules of construction for oil and gas leases are well established and mirror the rules for construction of contracts generally.

"[T]he intent of the parties is the primary question; meaning should be ascertained by examining the document from all four corners and by considering all of the pertinent provisions, rather than by critical analysis of a single or isolated provision; reasonable rather than unreasonable interpretations are favored; a practical and equitable construction must be given to ambiguous terms; and any ambiguities in a lease should be construed in favor of the lessor and against the lessee, since it is the lessee who usually provides the lease form or dictates the terms thereof." *Jackson v. Farmer*, 225 Kan. 732, 739, 594 P.2d 177 (1979).

Unambiguous contracts are enforced according to their plain, general, and common meaning in order to ensure the intentions of the parties are enforced. See *Wood River Pipeline Co. v. Willbros Energy Services Co.*, 241 Kan. 580, Syl. ¶ 3, 738 P.2d 866 (1987). The intent of the parties is determined from the four corners of an unambiguous instrument, harmonizing the language therein if possible. See *Brown v. Lang*, 234 Kan. 610, Syl. ¶¶ 1, 2, 675 P.2d 842 (1984); *Wiles v. Wiles*, 202 Kan. 613, 619, 452 P.2d 271 (1969). Ambiguity does not appear until the application of the pertinent rules of interpretation to the face of the instru-

ment leaves it genuinely uncertain which of two or more meanings is the proper meaning. *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741 (1987).

When analyzing whether a lease has terminated because the lessee has not timely commenced a well, our Supreme Court has looked to the language of the controlling instrument, reading it as a whole, to determine the nature and extent of the lessee's obligation. See *Shoup v. First Nat'l Bank*, 145 Kan. 971, 976, 67 P.2d 569 (1937) (an escrow agreement required not only timely commencement but continued operations with due diligence to completion).

Our courts have considered clauses which require the lessee to commence operations for drilling in a number of instances. Most recently in *A & M Oil, Inc. v. Miller*, 11 Kan. App. 2d 152, 154-55, 715 P.2d 1295 (1986), another panel of this court held that commencement of actual drilling of a slant well that had not yet penetrated the lessors' property line prior to the date required for the commencement of drilling operations was sufficient to preserve the lease. We held that the leases were unambiguous and did not require physical entry on the leased premises. The start of a well bore with a preplanned destination on the leased land was, by the discernible intent of the parties from the four corners of the instrument, the commencement of operations for drilling.

In *Herl v. Legleiter*, 9 Kan. App. 2d 15, 668 P.2d 200 (1983), the court considered a lease termination provision identical to the provision in this case. By the termination date, an access road had been built, the location staked, pits constructed, mud delivered to the well site, and stem and casing pipe delivered to a location accessible to the well site. Although the lessee had entered into preliminary negotiations with a drilling company, he had no firm commitment from them and no written contract as required by their policy. The trial court found making preparations to drill did not constitute commencement of drilling where the lessee neither owned a drilling rig nor had one under contract. The *Herl* court agreed with the trial court's finding that lessees failed to timely commence the well. The *Herl* court also found

the lessees failed to complete the well with due diligence. 9 Kan. App. 2d at 18.

In *Phillips v. Berg*, 120 Kan. 446, 243 Pac. 1054 (1926), hauling sand and cement to a job site was held to be insufficient to preserve a lease. Our Supreme Court further held that the commencement of operations clause required operations related to the well which was completed to be timely commenced and that beginning unrelated operations within the time limit was insufficient when the well that was begun was not completed.

*Hennig v. Gas Co.*, 100 Kan. 255, 257, 164 Pac. 297 (1917), also dealt with a lease clause which required the lessee to commence "operations to drill on said land." 100 Kan. 255, Syl. ¶ 3. The court found that driving a stake locating a gas well and another marking the location for a boiler to drive drill machinery did not constitute the commencement of operations to drill under the terms of the lease. 100 Kan. 255, Syl. ¶ 4.

The court did find drilling operations had been timely commenced and the operations pursued with reasonable diligence in *Baughman v. Ault*, 115 Kan. 553, 223 Pac. 815 (1924). In *Baughman*, drilling was commenced within the lease term, but it was later discovered a different type of rig was needed. Another rig was brought in and the well completed. 115 Kan. at 554.

There is authority in Kansas which hints that something less that actual drilling might satisfy a requirement of the "commencement of drilling." See *Herl v. Legleiter*, 9 Kan. App. 2d at 18. The Supreme Court has apparently assumed something less than spudding might constitute commencement of drilling operations. However, the lease in this case at hand required that the lessee actually "commence to drill" before the expiration of the lease in order to avoid termination. See also *Shoup*, 145 Kan. at 979 ("It may be doubted that the dumping of some usable and useful equipment on a location by one who has no intention of drilling a well himself, but expects it to be used by some one with whom he may contract thereafter for drilling of a well constitutes, in any sense, a commencement of operations for drilling of the well."); *Hennig*, 100 Kan. at 258 (the driving of stakes to

indicate the location of a well and of a boiler to run a drilling rig cannot be said to be a commencement of operations to drill).

Professor David Pierce offers the following analysis based on the limited authority implying that something less that actual drilling might be sufficient under some leases:

"In *Herl v. Legleiter* the Kansas Court of Appeals suggests something less than actual drilling may be sufficient to satisfy a commencement clause. However, it appears where something less than actual drilling is being relied upon, the lessee should be required to demonstrate what amounts to an irrevocable commitment to conduct operations, to completion, on the leased land. The best evidence of this, absent actual drilling on the premises, is an enforceable contract with a third party to drill a well on the leased land. However, the lessee runs a risk when something less than an appropriate rig is in place on the lease." 1 Pierce, Kansas Oil and Gas Handbook § 9.34 (1991).

Allowing an irrevocable commitment to conduct operations to completion to satisfy a lease requiring the commencement of drilling, and not merely operations for drilling, too broadly states the law of Kansas. Here, actual drilling had not been commenced by the lease anniversary date, whether August 3 or 13. The only actions taken on the leased property prior to August 13 were the staking of the well location, an elevation survey, the signing of a written contract with Duke Drilling, an agent of Duke Drilling digging drilling pits and leveling the location, and the drilling of a water supply well.

An analysis of the plain terms of the lease reveals that the trial court erred in granting summary judgment for JFW. The lease provides that the lessee must "commence to *drill* a well within the term of this lease." (Emphasis added.) Under the plain terms of the lease, actual drilling was required prior to the termination date.

"American courts have traditionally taken the view that competent adults may make contracts on their own terms, provided they are neither illegal nor contrary to public policy and, in the absence of fraud, mistake, or duress, that a party who has fairly and voluntarily entered into such a contract is bound thereby, notwithstanding it was unwise or disadvantageous to that party. [Citation omitted.]" *Metropolitan Life Ins. Co. v. Strnad*, 255 Kan. 657, 670-71, 876 P.2d 1362 (1994).

JFW alleges no fraud, mistake, or duress and was free to contract on its own terms. JFW is now bound by those terms.

JFW argues that its activities up until September 3, 1991, were sufficient to extend the lease. The problem with JFW's argument is that JFW fails to distinguish the activities performed prior to the lease termination date from those occurring after that date, which are relevant only in determining if the lessee used due diligence in completing the well and not in determining whether the well was timely commenced. See *A & M Oil*, 11 Kan. App. 2d at 154.

JFW extensively reviews cases from other jurisdictions which would support its position that minimal activities on the leased property are sufficient to constitute commencement. These cases, however, are not persuasive, given current Kansas law. Significantly, the *Shoup* court declined the lessee's invitation to adopt a more liberal interpretation of the commencement clause in conformance with other jurisdictions. See *Shoup*, 145 Kan. at 977.

JFW also argues a finding that the well had not been timely commenced would be grossly inequitable and would not constitute a reasonable interpretation of the lease. Kansas courts have refused to apply equity in cases involving commencement. See 1 Pierce, Kansas Oil & Gas Handbook § 9.32 (1991); *Shoup*, 145 Kan. at 980 (Allen, J., dissenting.).

The case is reversed and remanded for entry of judgment in favor of Hall.