(967 P.2d 1090)

No. 78,744

MARK RINEHART, *Appellant,* v. NORTHERN NATURAL GAS
COMPANY, *Appellee.*

———

Opinion filed
November 20, 1998.

*Rex A. Sharp*, of Sharp, McQueen, McKinley, Dreiling, Morain & Tate, P.A.,
of Liberal, for appellant.

*Roger E. McClellan*, of Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., of
Wichita, for appellee.

Before BRAZIL, C.J., ELLIOTT, J., and DEAN SMITH, District Judge
Retired, assigned.

ELLIOTT, J.: Mark Rinehart appeals from the summary judg-
ment entered in favor of Northern Natural Gas Company
(Northern) in this controversy involving a gas pipeline easement.

We affirm.

Rinehart is the surface owner of land in Seward County and in
1950, executed an easement in favor of Northern involving
Northern's natural gas pipeline.

The easement clause around which this appeal revolves provides:

"(3) That grantee [Northern], upon written application by the grantors [Rinehart],
will make, or cause to be made, a tap in any gas pipe line constructed by
[Northern] upon the above described premises for the purpose of supplying gas
to [Rinehart], for *domestic purposes only and not for re-sale, and for use upon
the above described premises only.*" (Emphasis added.)

In 1996 (some 40 years after the easement was executed) Rine-
hart applied for a gas tap for use in irrigating his crops. When

Northern denied the application, Rinehart filed suit, and eventually both parties moved for summary judgment. The trial court denied Rinehart's motion and granted Northern's motion.

Summary judgment is proper when the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Richardson v. Northwest Central Pipeline Co.*, 241 Kan. 752, 756, 740 P.2d 1083 (1987).

When interpreting a written document like that here involved, the intent of the parties is the central question. *Hall v. JFW, Inc.*, 20 Kan. App. 2d 845, Syl. ¶ 2, 893 P.2d 837, *rev. denied* 257 Kan. 1092 (1995). Courts should avoid unreasonable interpretations which negate the parties' intent. *Jackson v. Farmer*, 225 Kan. 732, Syl. ¶ 8, 594 P.2d 177 (1979).

In the present case, Rinehart contends the clause in the easement allows him a gas tap so he can acquire gas for agricultural purposes. The trial court ruled the clause restricted gas usage to domestic purposes only.

Clauses such as the one here involved have been in use for many years; they authorize a landowner to take gas for domestic purposes. Increased demand for a cheap supply of natural gas for farming uses has led many landowners to negotiate for irrigation or agricultural gas clauses in their oil and gas leases. See, *e.g.*, *Lauck Oil Co. v. Breitenbach*, 20 Kan. App. 2d 877, 878, 893 P.2d 286 (1995). However, the tap clause or gas clause in the typical oil and gas lease does not make gas available for irrigation or agricultural purposes. See 3 Williams & Meyers, Oil and Gas Law, §§ 661-62 (1997).

In Kansas, early lease forms often permitted use of free gas for "farm and domestic use." See, *e.g.*, *Rose v. Lanyon*, 68 Kan. 126, 127-28, 74 Pac. 625 (1903); 1 Pierce, Kansas Oil and Gas Handbook, § 12.08 (1991). However, "domestic use" language in free or cheap gas clauses has generally been understood to mean gas for use in the principal dwelling on the property; it is not understood to allow unlimited use of gas, "as such would be economically unfeasible" and would lead to an "incredulous" construction. *Richardson*, 241 Kan. at 759-60. See generally *Alderson v. Natural Gas*

*Co.*, 116 Kan. 501, 503, 227 Pac. 347 (1924) (covenant to provide domestic use gas runs with the land).

Under the facts of this case, the trial court did not err in ruling the easement did not require a gas tap for agricultural or irrigation uses. The trial court properly denied Rinehart's application for an irrigation gas tap filed more than 40 years after the gas pipeline easement was executed.

Affirmed.